THE COMMERCIAL INSURANCE COMPANY

*v.*

ANNA SPANKNEBLE.

1. INSURANCE—*whether a married woman is the absolute owner of her own realty.* A married woman may insure a building which she owns, and which is situate upon ground to which she holds the title in fee, and she will be regarded as being the absolute owner of such property, and within the requirement in a policy thereon, which provides that if the interest of the assured be not an absolute ownership, it should be so stated in writing, with the true title of the assured, although her husband may have acquired an estate by the curtesy in the premises before the passage of the married woman's act of 1861.

2. SAME—*of the description of an interest in a trustee.* A policy issued to the owner of property, contained, in the body of it, this clause: "Loss, if any, payable to Elias Greenebaum, trustee, as his interest may appear." This was held to be a sufficient description of the interest of Greenebaum, who held a deed of trust upon the property, and a compliance with a condition in the policy that an interest in the premises less than an absolute estate must be stated therein.

3. SAME—*effect of notice to an agent—and of omissions by him.* Notice to an insurance agent who issues a policy, of facts relating to the subject matter of the insurance, is notice to the company, and if he fails to properly state them in the policy when relied upon and trusted to do so, the company should not be permitted to escape liability on that ground.

4. So, where the conditions of a policy required the interest of the assured to be stated therein, if it was less than an absolute ownership of the premises, the company can not avail of an omission of the agent to

state such lesser estate, if he knew the fact in respect thereto at the time he wrote the policy. The case of *The Illinois Mut. Fire Ins. Co.* v. *The Marseilles Manufg. Co.* 1 Gilm. 236, is not in conflict with this doctrine.

5. Nor is it essential, as was said in the case in 1 Gilm. 236, that the information should be contained in the application, as the case of *Atlantic Ins. Co.* v. *Wright*, 22 Ill. 463, holds that if the facts were known to the agent who made the survey and filled up the application, and they were omitted by him, the insurer could not avoid paying the loss for that reason.

6. Same—*prohibition of a sale of the property insured.* A policy upon a building occupied as a brewery, covered, also, a steam boiler and connections, vats, tubs, &c., contained in the building, and stated, as one of the conditions, that "in case of any sale, alienation, transfer, conveyance or change of title in the property insured," the insurance should be void. This was held to relate alone to the real estate, and did not operate as a prohibition of the sale of the articles of personal property covered by the policy.

7. But the various articles were separately insured, the risk on each being specified, and if the condition prohibiting the sale did relate to the personalty, it would be a fair and reasonable construction to say that the sale named in the condition referred to each item of separate insurance, and that the sale of one class separately insured would not affect the others.

8. And where the assured was a married woman, a sale of property, even if within the prohibition, made by her husband, without her procurement or consent, would not affect her rights under the policy.

9. Nor would a mortgage upon the realty constitute a sale or transfer thereof, within such a prohibitory clause. And in this case, especially, such a construction would be excluded by an explanatory clause in the policy, which was, that "an entry for foreclosure of mortgage, or the levy of an execution, or an assignment for the benefit of creditors, shall be deemed an alienation of the property."

10. Same—*as to a continued occupancy of the premises insured.* Under a clause in a policy upon a brewery, which provided that if the premises should be vacant or without occupant during the term of insurance, the policy should become void, if the premises were in the same condition in that respect at the time of the loss they were when the policy was issued, and such condition was known to the agent at the time, the right of recovery by the assured will not be affected by the fact that the premises were without an occupant at the time of the loss.

11. But where the building insured was used as a brewery, and was not occupied as a residence when insured, it can not be said it had become vacant, because no one resided in the brewery when it was destroyed.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A PORTER, Judge, presiding.

This was an action of assumpsit, brought in the court below by Anna Spankneble against the Commercial Insurance Company, to recover upon a policy upon premises occupied as a brewery.

The following are the conditions in the policy, referred to in the opinion of the court:

"And it is further agreed that in case the above mentioned premises, at any time after the making of and during the time this policy would otherwise continue in force, shall from any cause be vacant or without occupant, unless notice of the same shall first have been given this company, and mentioned in or indorsed upon this policy, this insurance shall be void and of no effect.

"And that this policy is made and accepted upon and in reference to the application, plan, description or survey filed in this office, and the terms and conditions hereunto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for.

"If the premises insured are held upon lease, or upon leased ground, or the interest of the assured is not one of absolute ownership, or if it be equitable, it must be so stated to the company in writing with the true title of the assured and the extent of his interest, and so expressed in this policy in writing, otherwise the insurance shall be void.

"And in case of any sale, alienation, transfer, conveyance, or change of title in the property insured by this company or of any interest therein, such insurance shall be void and cease. And an entry for foreclosure of mortgage, or the levy of an execution, or an assignment for the benefit of creditors shall be deemed an alienation of the property."

56       COM. INS. CO. *v.* SPANKNEBLE.       [Sept. T.,

Opinion of the Court.

. A trial resulted in a verdict and judgment for the plaintiff. The company appealed.

Mr. O. B. SANSUM, for the appellants.

Messrs. ROSENTHAL & PENCE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court: '

This was an action of assumpsit, brought by appellee in the Superior Court of Chicago, against appellants, to recover on a policy of insurance for a loss of the insured· property by fire. The policy covered a three story frame building, occupied as a brewery, a steam boiler and connections, vats, tubs, coolers, barrels of malt, barley and hops, all contained in the building, "loss, if any, payable to Elias Greenebaum, trustee, as interest may appear," for the period of one year from the twenty-first of November, 1866. The policy contained a number of conditions. They provided that if after making the policy and during its continuance, the property should become vacant or ceased to be occupied, unless notice should be given the company and mentioned in or endorsed upon it, the policy should become void.

Another provided that if the premises were held by lease, or upon leased grounds, or the interest of the assured was not an absolute ownership, it should be so stated in writing, with the true title of the assured. And also, that in case of any sale, alienation, transfer, conveyance or change of title to the property insured, such insurance should be void. And an entry under a foreclosure of mortgage, or the levy of an execution, or an assignment for the benefit of creditors should be regarded an alienation of the property. It appears that a fire occurred on the twenty-seventh of July, after the policy was issued, and destroyed the property.

It is first urged that notwithstanding appellee owned the fee to the premises, before her marriage, her estate in the

premises was not absolute, because by the marriage and the birth of a child the husband had become entitled at her death, to hold as a tenant by the curtesy, and entitled to a joint occupancy during their lives. We are at a loss to see how such facts could render her title or estate contingent. She held the title in fee simple absolute. And although the husband had the right during marriage to occupy the property jointly with her, that did not render her absolute estate contingent. No one would say that under such a provision in a policy issued to a married man he could not recover, because his wife had a contingent right to dower in the premises.

Again, it appears that the agents of the company were apprised of the fact that appellee was a married woman when the policy was issued. The husband of appellee went to appellants' business office with Mr. Foreman, and said to the secretary of the company that they wanted the policy changed to his wife's name, and her name was written in the policy by the agent of the company. Knowing the fact when he filled up the policy, if the company deemed it important, he should have so stated the title. To permit the company, when the omission was by their own agent, to now avoid the payment of the loss for the neglect of their agent would amount to a fraud. Those unskilled in the technical terms of the law should only be required to state facts to the agent, and if he fails to properly state them in the policy when relied upon and trusted to do so, the company should not be permitted to escape liability on that ground.

This was the rule announced in the case of *Atlantic Insurance Co.* v. *Wright*, 22 Ill. 463. It would be a fraud to permit the company to receive the premium, when they knew that the policy was not binding, and which they never intended to pay. Such bodies act through officers or agents only, and notice to the agent is the only knowledge the company could have, and his knowledge in regard to the transaction must bind the company.

As to the objection that Greenebaum held a deed of trust on the property and therefore the condition was violated, it is a sufficient answer to say that it was not only known to the agent, but he in effect so stated the fact in the body of the policy. There was inserted in writing in the body of the policy this language : "Loss, if any, payable to Elias Greenebaum, trustee, as his interest may appear."

From this language, can there be any doubt that he was stated to be a trustee of the property ? We presume all persons would so understand the clause, and that it would be difficult to give it any other interpretation. It asserts that he was a trustee and had an interest, and if a loss occurred payment was to be made to him as his interest should appear. It may not be as formal and artistically drawn as if it had been done by counsel, but nevertheless it must be regarded as sufficiently expressed in the policy under the condition imposed.

Nor does the case of *The Ill. Mut. Fire Ins. Co.* v. *The Marseilles Manuf'g Co.*, 1 Gilm. 236, conflict with the views here expressed. That case holds that where the assured has a less estate than an unincumbered fee in the premises, it is his duty to disclose the fact to the insurer. In this case all the facts were sufficiently disclosed.

That the information should be contained in the application as is there said, is not always true, as the case of the *Atlantic Ins. Co.* v. *Wright, supra,* holds that if the facts were known to the agent who made the survey and filled up the application, and they were omitted by him, the insurer could not avoid paying the loss for that reason.

It was next insisted that the policy was rendered void by the sale of the boiler and building to Klausen. An examination of the evidence shows that although appellee says in her examination after the fire, by the attorney of the company, that her husband sold the property, still, she, at the same time, says they owed Klausen, and the house was never moved; and she further says that Klausen paid no money. That was an examination, without any cross examination, and

when those conducting it are under no obligation to reduce it all to writing it is not entitled to be read in evidence unless signed by the party, and it is then to be regarded of less weight than an examination regularly conducted in court, where a cross examination is had. A party examined as appellee was, may be, and generally is, not fully apprised of the importance of many facts that might be stated in explanation that would give a very different force to the statement.

It nowhere appears that a valid sale of the house was made. It does not appear that such an instrument was executed as would pass the title, nor was it severed from the freehold, of which it was a part. Again, from an examination of the testimony of the husband, although he admitted it to be a sale, still, taking his testimony altogether, we are satisfied that the bill of sale, as he calls it, was only intended as a mere security. This is rendered more apparent because he says Klausen came to him afterwards and asked him how much he must have for the boiler, and on being informed, Klausen sold it. If it had been his, why ask the former owner how much he must have on the sale? Again, the policy was to the appellee, and there is no pretense that she ever sold or authorized the property to be sold. And surely a policy containing such a condition can not be defeated by a stranger to the transaction. Nor should it be by a husband, whose right to sell and dispose of the wife's realty is not recognized.

It will be observed that the various articles of property were separately insured; and on this boiler there was five hundred dollars risk, named and separately specified. Under such a policy, even if the condition related to the personalty, it would but be a fair and reasonable construction to say that the sale named in the condition referred to each item of separate insurance, and that the sale of one class separately insured would not affect the others. But the clause under consideration obviously relates alone to the real estate. It refers to sale, conveyance, alienation, transfer or change of title, in the property insured. But if such is not the true

construction, as the boiler was alone sold, it only rendered the insurance on it void.

If a mortgage was given on the house, that would not be a sale, alienation, conveyance, transfer, or change of title, such as was prohibited by this clause. The explanatory clause would exclude such a construction. It says an entry for a foreclosure of a mortgage, or a levy on execution, or assignment for the benefit of creditors, shall be deemed an alienation of the property. But it does not say that a mortgage shall be so regarded. See *Smith* v. *Mut. F. Ins. Co.* 50 Maine, 96 ; *Masters* v. *Madison Ins. Co.* 11 Barb. 624 ; *Rollins* v. *Columbian Ins. Co.* 5 Foster, 204 ; *Ayers* v. *Hartford Fire Ins. Co.* 17 Iowa, 180. These authorities hold that a mortgage does not operate as such a sale or transfer of property as to bring a policy within such a prohibitory clause. A party claiming such a forfeiture is *stricti juris*, and must bring himself strictly within the clause of forfeiture to defeat the right.

As to the objection that the premises were unoccupied when the fire occurred, it is a sufficient answer to say that the brewery was in the same condition when the fire occurred that it was when the policy was issued, and the agent of the company was informed of its condition when he issued the policy. The company took the premium, knowing the condition of the premises, and their condition being the same when destroyed by the fire, they should not be permitted to escape liability on that ground. The premises were no more vacant or unoccupied at the time of the fire than when the insurance was effected. They were not occupied as a residence when insured, and it surely cannot be said that they had become vacant because no one resided in the brewery when it was destroyed. The policy used was no doubt a blank intended for the insurance of a residence, and although this clause was not strictly applicable to a brewery in which no one lived, it was not stricken out at the time the blanks were filled, and the policy was delivered.

Appellee, although a married woman, could insure her property. It seems to have been her property, as well the land as the improvements. In *Emerson* v. *Clayton*, 32 Ill. 493, it was held that a married woman has the sole control of her separate property. And this being true, and the statute has so declared, she necessarily has the undoubted right to insure it, although owned by her before her marriage, and although her husband acquired a life estate in it before the adoption of the act known as the married woman's law.

The evidence fails to show that the husband of appellee burnt the property. It is true his son swears he did. But it appears the young man had been guilty of repeated larcenies, and was impeached by a large number of witnesses acquainted with his character for truth and veracity, who swear it was bad, and they could not believe him under oath. We think he was effectually impeached and that his testimony was unworthy of belief, and the jury did right in disregarding it. To give it credit would be to blot out all distinction between character for virtue, honesty and veracity, and character for crime, immorality and falsehood.

We have been unable to perceive any error in this record, after a careful examination of all the points presented and urged by appellants' counsel, and the judgment must be affirmed.

*Judgment affirmed.*