THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

*v.*

MARTHA E. AMERMAN.

*Filed at Ottawa January 25, 1887.*

1. INSURANCE—*waiver of condition by accepting premium with knowledge of its breach.* Generally, the receipt of the premium by an insurer after knowledge that a condition of the policy has been broken, will amount to a waiver of the condition.

2. A condition in a policy of insurance, that the insured shall not engage in a particular occupation, being for the benefit and protection of the insurer, may be waived, either before or after breach thereof; and when the agent of the insurer, knowing of the right of forfeiture, permits the assured to pay the premium, the latter relying on his policy as valid and subsisting, the company will be held to have waived the condition.

3. SAME—*when acceptance of premium is not a waiver.* But where the assured, while engaged in a prohibited occupation, pays a premium with full knowledge that the company does not waive its right to declare a forfeiture for the breach of a condition in his policy, and for the purpose, only, of preventing a lapse of his policy, so that it may hold good after he quits such occupation, the company will not be estopped from insisting on the forfeiture in case of the death of the assured while in the prohibited occupation, and no recovery can be had on the policy.

4. SAME—*evidence as tending to show intention with which premium was paid and received.* A policy of insurance contained a condition of forfeiture in case the assured should engage in the business of brakeman, or in the switching or coupling and uncoupling of railroad cars. Consent to engage in such business was refused, and the assured was advised to take an accident policy, and keep up his payments, so that his policy might be good when he ceased to engage in the prohibited business. He paid a premium while engaged in coupling and uncoupling cars. The insurance agent, at the time of his payment, informed him that if he got killed while braking on the train, his policy would amount to nothing, but if he died in any other way

his policy would be good, and he replied that he would pay his premiums with that understanding: *Held*, error to exclude this evidence, as it tended to show there was no waiver of the condition relied on by the assured, when he paid the premium.

    5. Same—*receipt of premium not a new contract of insurance.* Where a life policy of insurance provides for the payment of semi-annual premiums in advance, a receipt of a premium providing that payment thereof makes the policy binding for six months from the date thereof, is not a new contract of insurance, but its effect is to prevent a forfeiture for non-payment of the premium falling due at its date.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. David McCulloch, Judge, presiding.

Messrs. Cratty Bros., Messrs. Fuller & Gallup, and Mr. Miles A. Fuller, for the appellant:

It is only when the assured has been led to believe, by the acts and dealings of the company that a right of forfeiture will not be insisted on, that it will be estopped from setting up such defence. May on Insurance, sec. 361; *Insurance Co.* v. *Warner*, 80 Ill. 413.

The receipt having been offered in evidence as showing payment after a right to declare a forfeiture, the parol testimony of Feger was proper to explain the transaction, and show that it was no waiver of the company's rights. *White* v. *Morrill*, 32 Ill. 511; *Ditch* v. *Volkhardt*, 83 id. 184.

Mr. S. S. Page, for the appellee:

In behalf of appellee we insist that the notifications, and the acceptance of the premium on August 11, 1882, knowing the employment of Amerman, was a waiver of the condition in the policy. The company was notified through its agents, Deane & Payne, April 20, 1882, and through its agent, I. N. Feger, August 11, 1882. Notice to the agents is notice to the company. *Insurance Co.* v. *Spankneble*, 52 Ill. 53; *Insurance Co.* v. *Wright*, 22 id. 462; *Insurance Co.* v. *Scheuler*, 38 id. 166.

Acceptance of the premium, knowing the policy is subject to forfeiture by reason of the violation of a condition, is a waiver of the condition, and the policy will be binding. *Insurance Co.* v. *Barringer*, 73 Ill. 230.

It would be a fraud to permit the company to receive the premium when they knew the policy was not binding, and which they never intended to pay. *Insurance Co.* v. *Spankneble*, 52 Ill. 53. To the same effect, see *Insurance Co.* v. *McGuire*, 51 Ill. 342; *Insurance Co.* v. *Jones*, 62 id. 458; *Insurance Co.* v. *Slaughter*, 12 Wall. 404; *Insurance Co.* v. *Warner*, 80 Ill. 410; *Insurance Co.* v. *Slockbower*, 26 Pa. 199; *North Berwick Co.* v. *Insurance Co.* 52 Maine, 336; *Viele* v. *Insurance Co.* 26 Iowa, 9.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

On the 11th day of February, A. D. 1882, the Northwestern Mutual Life Insurance Company issued a policy upon the life of David A. Amerman, in the sum of $1000, payable at death, to appellee, his wife. The policy provided for the payment of semi-annual premiums by the assured, on or before noon of the 11th day of the months of February and August of each year, and contained the conditions, among others, that if the premiums should not be promptly paid when stipulated, and "if the said person (the assured) shall be personally engaged * * * as engineer or fireman of any locomotive engine, or in switching, or coupling or uncoupling cars, or be employed in any capacity on the trains of a railroad, except as passenger or sleeping car conductor, mail agent, express messenger or baggage master, * * * without, in each or either of the foregoing cases, having first obtained the written consent of the company, * * * then, and in every such case, this policy shall be null and void." The assured, at the time of issuing the policy, was a clerk in the office of the Wabash railway company, but shortly afterwards went upon that railroad in the capacity of brakeman, and was subsequently promoted

to the position of conductor of a freight train. It appears,
from the evidence, that part of his duty as such conductor
was to couple and uncouple cars of his train, and while thus
engaged on the morning of the 11th day of February, 1883,
he was caught between the ends of projecting timbers with
which the cars were laden, and so injured that he died at eight
o'clock A. M. of that day. The consent of the company to
his entering upon the prohibited employment had not been
obtained. After engaging in the employment of braking, the
assured wrote to the State agents of appellant, advising them
that he was so engaged temporarily, while expecting something
better, and asking them what change would be necessary in
his policy, if any. This was on the 20th day of April, 1882,
and on the first day of May these agents replied as follows:

"CHICAGO, ILL., *May 1st, 1882.*

"*D. A. Amerman, Esq., 309 Maple St., Peoria, Ill.*

"DEAR SIR—Your favor at hand. I am sorry the company
will not issue permit for your present business. Let me tell
you what to do. Take out an accident policy for six months
or a year. In the meantime you may quit braking, when our
policy would be good. The accident policy pays you in case
of death by or resulting from accident, and pays you a weekly
compensation while you are laid up. You can not probably get
a life policy in any first-class company for your present busi-
ness. The accident policy will not cost you a large amount,
and when you quit braking you will have our policy, which is
as good as you can get.

"Mead & Dexter, of this city, have a good accident com-
pany. I will have them write you.

Yours,        DEAN & PAYNE."

It is obvious that the assured, by entering into this em-
ployment, committed a breach of the condition of the policy,
and it is not claimed that the company is liable unless it has
waived the condition, or has done some act that will estop
it from interposing the breach of the condition as a defence.

The acts and declarations of the company relied upon as estopping the company from setting up a breach of the condition mentioned as a defence to this action, occurred after the receipt by the assured of said letter from Dean & Payne, and are, in substance, that on the first day of July, 1882, the company sent a notice to the assured that a semi-annual premium on his policy would be due on the 11th day of August following, at noon, and unless the same was paid the policy would be subject to forfeiture therefor, etc., and containing the statement, among others, that "members neglecting to pay are carrying their own risk; agents have no right to waive forfeitures; * * * prompt payment is necessary to keep your policy in force." That before noon of August 11 the assured paid the premium, and received from the company's agent the following instrument:

*NORTHWESTERN MUTUAL LIFE INSURANCE CO.*
HOME OFFICE, MILWAUKEE, WISCONSIN.

| | For terms of mutual agreement see policy. | |
|---|---|---|
| Premium .... $12.47 | | Policy No. 112,006, insuring the life of |
| Loan ....... 3.11 | | *David A. Amerman,* |
| Premium for six months .. $9.36 | | is hereby made binding for six months, from the 11th day of August, 1882, provided payment as per margin is made in due time, and the receipt is countersigned by I. N. Feger, Agt., Peoria. This payment and receipt shall not have force or effect to continue the policy beyond the period above stated. |
| Premium as above, received this 11th day of August, '82.  I. N. FEGER, *Agent.* | | |
| | | J. W. SKINNER, *Secretary, Ill.* |

And that afterwards, and on the 1st day of January, A. D. 1883, a like notice, in all respects, as that of July 2, was sent to assured, notifying him of the semi-annual premium falling due February 11, 1883. These facts are properly replied to

the plea of the company setting up the breach of the condition in the respect named, as a defence.

In the court below, appellant company contended that the assured paid the premium with full knowledge that the company would not carry a policy on his life during his continuance in employment in the capacity of brakeman, etc., and that he made the payment in accordance with the suggestion of the letter of the State agents, for the purpose of preventing the lapsing of his policy, and for no other purpose, and that the company was not therefore estopped by the acceptance of the premium. At the trial, to maintain this contention, it put its local agent, Feger, upon the stand, who, among other things, testified: "Am agent for defendants; knew Mr. and Mrs. Amerman; became acquainted with them about the date of this policy; David A. Amerman paid all the premiums that were paid upon such policy; the date of the policy was the first one, and the second on August 11, following.

Q. "State what explanation, if any, you gave Mr. Amerman at the time of delivering this last receipt to him, in reference to it (Objected to; objection overruled.)

A. "Well, I told him that if he got hurt while braking on the train, his policy would not amount to anything; but if he should die in any other way, he could collect his policy, and I guess he got the same from the company. He had written to the company before he came to me.

Q. "What reply did Mr. Amerman make to that, if any? (Objection by plaintiff; objection overruled.)

A. "Well, he said he would pay it that way—with that understanding—which he did.

Q. "Was there anything else said at that time, that you recollect of, as explanatory of your question or his answer?

A. "I don't know as there was."

On motion of appellee, the court excluded from the jury the three foregoing questions to, and answers of, the witness, and the defendant, by its counsel, excepted.

It also appeared that the assured, at the time of his death, had an accident policy of $1000 upon his life, but when the same was taken out does not clearly appear.

It is contended by appellee, that the company having received the premium with full knowledge of the breach of the condition of the policy, is estopped from insisting upon such breach as a defence. It has been repeatedly held, in this State and elsewhere, that the receipt of the premium by the insurer, after knowledge that the condition of the policy had been broken, would amount to a waiver of the condition. *Commercial Ins. Co.* v. *Spankneble,* 52 Ill. 53; *Reaper Ins. Co.* v. *Jones,* 62 id. 458; *Lycoming Ins. Co.* v. *Barringer,* 73 id. 230. An examination of the cases so holding, however, will, it is believed, show that the assured, in each case, in paying the premium, was induced to do so relying on the validity of his policy, and that the act of the company, therefore, in receiving the premium, would estop it from setting up the forfeiture. In *Commercial Ins. Co.* v. *Spankneble, supra,* the company sought to interpose, as a defence, facts constituting a breach of a condition of the policy, which were known to its agents to exist when the policy issued, and the court says: "To permit the company, when the omission was by their own agent, to now avoid the payment of the loss, * * * would amount to a fraud. * * * It would be a fraud to permit the company to receive the premiums when they knew that the policy was not binding, and which they never intended to pay."

Conditions like those under consideration, are inserted in the policy for the benefit and protection of the insurer, and may be waived either before or after breach thereof, and when the agent of the company through whom it must act in dealing with the public, knowing of the right of forfeiture, permits the assured to pay the premium to the company, he relying on his policy as valid and subsisting, the company will be held to have waived the condition. It would be grossly inequitable to permit the company to receive the premium from

an assured, who was induced thereby to rely upon his policy for indemnity, and then insist upon a forfeiture from facts known by it to exist when the premium was paid. This we understand to be the rule laid down by text writers, and supported by the adjudicated cases. May, in his work on Insurance, page 507, thus states the rule: "An estoppel arises when the insurer, having knowledge of the facts to which he has the right to take exceptions, or which constitute a defence against any claim under the policy, if he chooses to avail himself of them, so bears himself thereafter in relation to the contract, as fairly to lead the insured to believe that the insurer still recognizes the policy to be in full force." It is to be observed, that it is the effect upon the insured that gives vitality to the estoppel, rather than the purpose or intent of the insurer, and unless the conduct of the insurer has in some way misled the assured, or induced him to do some act or neglect to do some thing to his prejudice, in reliance upon the acts or declarations of the insurer, there can be no estoppel. (May on Insurance, *supra*.) It is said by this court: "The doctrine of *estoppel in pais* is based upon a fraudulent purpose or fraudulent result. If, therefore, the element of fraud is wanting, there is no estoppel, as, if both parties were equally cognizant of the facts, and the declarations or silence of the one party produced no change in the conduct of the other, he acting solely upon his own judgment. There must be deception, and change of conduct in consequence." (*Davidson* v. *Young*, 38 Ill. 152.) Again it is said: "There must be a change of conduct, induced by the act of the party estopped, to the injury of another, in order to prevent him from showing the truth. If the element of fraud or injury is wanting, there is no estoppel." *Flower et al.* v. *Elwood et al.* 66 Ill. 447; *Powell* v. *Rogers*, 105 id. 318.

There can be no fraud if the parties to the transaction are equally informed of all the facts, and act independently upon such knowledge equally possessed by both parties. Nor can

it be said that one party has been misled or induced to do
an act by the conduct or declarations of another, when there
has been no suggestion of falsehood or suppression of the
truth, by silence or otherwise, and the party acts, after full
knowledge, upon his own judgment or according to his own
inclination. (If, as before substantially stated, the assured
·paid the premium under the belief, fairly induced by the acts
and declarations of the agents of the defendant company, that
the policy was to be in force while he continued in the prohib-
ited occupation, the acceptance of the money by the company
would estop it from insisting upon the condition of the policy
as a defence. The mere act, however, of receiving or collecting
the premium, by the insurance company, with knowledge of
an existing right of forfeiture, has, so far as we know, never
been held to estop the company from setting up such forfeit-
ure, if the assured had no reason fairly to conclude, from the
acts and declarations of the company, or its agents, that the
forfeiture had been or would be waived, when he made the
payment of the premium, or unless the payment was made in
reliance upon the validity of his policy, induced by the acts,
declarations or silence of the company. If the assured knew
or understood that the company intended to insist upon the
forfeiture for breach of the condition of the policy under con-
sideration, if he came to his death by reason of or while in
an employment in violation of such condition, and with such
knowledge, for the purpose of keeping his policy from lapsing
for non-payment of the premium, so that it might be in force
after he should quit such employment, as suggested by the
company's State agents, or for any other reason he might
deem to his advantage, paid the premium, the company might
rightfully accept it for the purpose for which it was paid,
without being guilty of fraud in setting up the breach of
such condition, which it had never consented to waive, and
which the assured knew it intended to insist upon. Mani-
festly, then, it was material to the inquiry to know whether

the payment of the premium by the assured, August 11, was made relying on the validity of his policy, induced by the acts or declarations of the appellant company, or whether he knew that the company intended to insist upon the condition of the policy if death ensued in consequence of his employment. It might be greatly to his advantage to suspend the force of his policy temporarily, while so engaged, and revive it when the necessity for such employment ceased. It not unfrequently happens, we presume, that it is necessary or desirable for persons having life insurance, to engage temporarily in some occupation, or travel for business or pleasure in latitudes, prohibited by their policy. In this case the assured wrote to the State agents that he had entered the employment on the train temporarily, while waiting for something better, and was promptly informed by the company, through these agents, that the company would not carry the risk while he was so engaged.

If the position contended for by appellee is correct, then it follows, that the insurance company, though acting in the utmost good faith, could not receive the premium at the request of the assured and for his benefit, with full knowledge on his part that the company would not carry a policy on his life or waive its right of forfeiture while the prohibited occupation continued, without being estopped from asserting its rights of forfeiture if death ensued from such employment. It would follow, that if the assured, from necessity, or because he might find it profitable or desirable, engaged temporarily in an occupation, or traveled in a latitude, not permitted by his policy, there is no alternative, he may not pay his premium to prevent his policy from lapsing for non-payment of premium, and thereby keep his policy in condition to revive when he resumes an insurable occupation, or returns to a locality in which, by the terms of his policy, he is permitted to reside, but he must permit the policy to lapse, and re-insure when the temporary prohibited occupation or residence has

ceased, if he desires so to do and remains insurable, at such increased rate of premium as his increased age may demand. We are not prepared to so hold.

It follows, therefore, that the evidence of the witness Feger, as it tended in some degree to show for what purpose the premium was paid, and whether or not the insured relied upon his policy as valid and subsisting insurance while he was engaged in braking on the trains of a railroad, was improperly excluded by the trial court. All the facts and circumstances attending the payment of the premium, and illustrative of the acts of the parties in respect thereto, were, we think, pertinent to the issue made by the pleadings, and under proper instructions should have been submitted to the jury.

It is said in argument, that the evidence shows that Mrs. Amerman, plaintiff, paid the premium of August 11, in the absence of her husband. That may be true, yet the whole evidence on that subject should have been submitted. The questions of how much the proposed evidence establishes, and of the credibility of the witnesses, are for the jury. If the evidence tends to prove any matter material to the issue, it is admissible.

It is also contended that the receipt given is a new contract, extending the insurance six months from its date. This, we think, is a misapprehension. It will be found, upon examination of the policy, that this receipt is issued under the third condition of the policy, and in pursuance thereof. No new contract of insurance was made or intended to be made. The only office of the receipt was to acknowledge the payment of the premium as required by the terms of the policy, and avoid the effect of the condition forfeiting the insurance for non-payment of the premium. *New England Fire and Marine Ins. Co.* v. *Wetmore,* 32 Ill. 242; *Herron* v. *Peoria Marine and Fire Ins. Co.* 28 id. 235.

This view will also dispose of the contention of appellee that the parol evidence offered and excluded, as before men-

tioned, would have the effect to alter or vary a contract in writing, and was therefore inadmissible. The receipt, with evidence of contemporaneous acts and declarations, should go to the jury, under proper instructions as to the weight and effect to be given thereto.

After what has been said, no extended discussion of the instructions complained of will be required, as, no doubt, upon another trial, they will be made to conform to the views here expressed.

The first and second instructions given for appellee, informed the jury, in substance, that if, after the assured was engaged as a brakeman on the trains of a railroad, the appellant company, with notice of that fact, by its agents, wrote the letter of May 1, and afterwards notified assured to pay the premiums on his policy, and collected and received the premium thereafter accruing, and gave assured the receipt mentioned, with knowledge that assured was so engaged and employed, then the jury would be justified in finding that the appellant company, by its acts, had waived the forfeiture provided for in said policy in case of such employment,— thereby, in effect, instructing the jury that the acts and declarations enumerated, as a matter of law, estopped the company whether the assured had been misled to his injury thereby, or not, or whether or not he had been induced, by the acts and declarations of the company, to pay the premium, alter his position in respect to the insurance, or take or neglect to take some other action in relation thereto to his prejudice, relying upon his policy as valid and binding while he was so employed. These instructions, in this respect, were erroneous.

For the errors indicated, the judgment of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court of Peoria county for further proceedings.

*Judgment reversed.*