## The German Insurance Company

### v.

## John O. Miller.

39  633
39  629

*Fire Insurance—Policy—Correction and Reformation of—Estoppel —Application—Conditions.*

1.  A court of equity will correct and reform a policy of insurance, where by fraud, accident or mistake it has been improperly drawn, but it is not necessary to seek such relief where the doctrine of estoppel may be applied.

2.  A condition in a policy declaring that a mortgage or incumbrance of the property mentioned therein avoids the same, is not wholly broken by a mortgage of a part of the property, consisting of separate articles, and capable of specific valuation, and in such case the insurance would be vitiated as to the part so mortgaged only.

3.  Answers written in an application for fire insurance, by an agent, without the assent of the applicant, will not bind him.

4.  An insurance company can not insist upon non-ownership of personal property covered, to avoid payment, where assured informed its agent at the time the application was signed, that another person was interested in a certain portion of it, but was told by such agent that the property could be written in his name.

5.  Conditions involving a forfeiture should be strictly construed.

6.  A company will not be permitted to avoid a policy upon ground of over-valuation of property covered, where its agent saw the same at the time the application was filled out, and assented to the figures.

7.  A mistaken or untrue statement of a material matter will not avoid a policy, when the company or its agent knew the real facts, especially where an agent fills up the application and knowing the real facts misstates them, either purposely or by mistake.

[Opinion filed June 12, 1891.]

Appeal from the Circuit Court of Logan County; the Hon. Cyrus Epler, Judge, presiding.

Messrs. Beach & Hodnett, for appellant.

Messrs. Blinn & Hoblit and E. Lynch, for appellee.

Wall, J.   This was an action of assumpsit upon a policy of insurance, in which the plaintiff recovered a judgment for

$826.25.   By the appeal of the company the record is brought here.

The policy covered a building called an implement house and certain implements and machinery therein.

The evidence tends to prove that the agent of the company solicited the appellee to make application for the insurance, and induced him to sign the application; that when the appellee so signed, only two of the questions were answered, viz., as to the valuation of the property, real and personal, and as to the description of the lots on which the building was situate; that these answers were written by said agent, and that the answers to the other questions were subsequently written therein by said agent, without the knowledge or consent of the appellee.   There is but little conflict as to this part of the testimony, the agent not appearing to deny what the appellee has sworn and the only contradiction consisting of an alleged admission by appellee to the adjuster, which appellee says he did not make.   Without discussing this branch of the evidence in detail, it is sufficient to say that the jury had abundant reason to accept the version of the appellee.

It follows, that as to all the answers so written by the agent, without the assent of the appellee, the latter is not responsible, and the attempt of the company to escape liability, because they are untrue, must fail.   These relate mainly to the condition of the property as to incumbrances, to the proximity of other buildings, and to the ownership of the property.   When appellee signed the application, he was standing with the agent, in full view of the property, and nothing was said by either of them as to any incumbrances, or as to danger from adjacent structures ; but appellee did state that he was not the sole owner of all the property, and that one Naugle owned a share in a small part of it, to which the agent said in reply, that appellee could take the insurance in his own name and collect from Naugle his proportion of the premium.

It hardly requires the citation of authority that under such circumstances the company can not insist upon a defense based on the ownership of the property.   It would work a

gross fraud to successfully interpose such an objection.    This interest of Naugle's was as to some of the implements, mere personal property.    The clause in the policy upon which reliance is placed, reads thus: " or, if the assured shall not be the sole and unconditional owner in fee simple of said property."    This language aptly refers to real estate, and not to personalty.    It is the language of the insurer, and when he seeks to avail of it to produce a forfeiture of his contract, it should be construed strictly against him.    It is hardly sufficient to reach the present condition where a part only of the property, and that personalty, was owned in partnership.

It is said, also, in the briefs, that by the verdict the jury did not allow for this item, but, whether so or not, we think there is no cause herein to disturb the judgment.

As to the alleged over-valuation contained in answer to the first question, there seems to be nothing very substantial in the proof.    The agent saw the property and had reasonable opportunity to judge of its worth.    He was inclined to urge appellee to make the policy as large as possible.    Doubtless his interest was in that direction.    He assented to the figures, indeed, appellee says he suggested them; and even though they may have been rather too high, the company should not be permitted to avoid the policy on this ground.

In the answer to the second question, the lots are described as lots 3 and 4, block 7, of Lawndale.    When this question was asked, the appellee said he was not sure as to the description, but thought this was right.    The agent said it was not very important, but that he was going to the county seat, would examine the record in the clerk's office and would get the proper description, " and put it in all right."

It now appears that the numbers of the lots and blocks were correct, but that the property was in Ewing's addition to Lawndale and not in the original plat, which also contained lots bearing the designation 3 and 4, in block 7, and it is urged that this is such a misdescription as to render the policy invalid in a court of law, where there is no power to reform it.

The suggestion is, therefore, that appellee should have applied to a court of equity for a correction of the policy, and that he is in no condition to recover at law.

It may be remarked at the beginning that it was wholly immaterial whether the property was in Ewing's addition or in the original plat of the town; that it was in the full view of the agent and he knew what it was. He was not misled and the true description was a mere formality. He was insuring that property regardless of its designation on the record.

Moreover he expressly undertook to examine the record and correct the description, if necessary. He did not do so. The error was carried into the policy. It was not discovered by the insured until this trial.

Should he be required to dismiss this suit and go into a court of equity?

The policy provides that no suit at law or in equity shall be sustainable unless brought within six months after the loss may have occurred. If this provision is valid it would bar the remedy by reformation unless some considerations might appear excusing the delay. We do not undertake to say what might be the result of such a suit, but we are very clear that under the circumstances the appellee should not be driven to that forum for relief.

It has been held repeatedly and is now the uniform current of decision, that a mistaken or untrue statement of a material matter will not avoid the policy when the company or its agent knew the real facts; and especially is this true when the agent fills up the application, and knowing the real facts, misstates them either purposely or by mistake.

This doctrine is frequently applied in the very important issue often raised as to whether there was other insurance, or whether the condition of the risk as to other buildings was truly stated. May on Ins., Secs. 497-9; Wood on Ins., Secs. 139-141, and notes.

Applying the same principle here, the objection now interposed should be disregarded. The agent knew that there was doubt as to the description, and he agreed to see that it was made as it should be. Upon the common doctrine of estoppel, the company should not be heard to set up this defense. It should not be allowed to say, " true, we know you were uncertain as to the number of your lots; true, we told you it

was not material, and that we would examine the record and correct the description if wrong, and that we have not done it though we knew you relied upon our assurance." It is not easy to state a case where the doctrine of estoppel, now so frequently and properly invoked in actions upon contracts of insurance, would be more justly applicable than here.

There was no variance between the application and policy or proofs, but the point is, that was a misdescription all the way through.

In this State it is well settled that a court of equity will correct and reform a policy of insurance where by fraud, accident or mistake, it has been improperly drawn. It does not follow, however, that it is necessary to seek such relief in cases where the doctrine of estoppel—an equitable doctrine now recognized at law, may be applied. Courts of law, by adopting this doctrine, which forbids the assertion of the inequitable defense, have rendered it unnecessary to invoke the aid of chancery.

In May on Insurance, Sec. 566, it is said that in most of the States " courts of law will apply the doctrine of waiver and estoppel so as to enable the plaintiff to maintain his action for indemnity and not drive him to a court of equity." So it was held in State Ins. Co., etc., v. Schreck, 27 Neb. 527, where there was a misdescription of the land on which the insured property was situated, the court quoting the foregoing extract from May.

There is, however, another view of the matter which would render the question of reformation not important. The policy refers to the property insured thus :

" Situated (except as otherwise provided) and confined to premises now actually occupied by the assured, to wit, in the county of Logan, lots 3 and 4, block 7, of Lawndale, Ill."

It might be a fair question whether, by this language, it was intended to describe the lot and block mentioned as being in any particular plat of Lawndale. It is "of Lawndale, Ill." Until it is shown that there are two plats—one the original, and one Ewing's addition, containing, each, lots and a block so designated, there is no difficulty; but when this appears there is an ambiguity. The ambiguity thus produced is latent, and

may be "holpen by averment." 1 Greenleaf on Evidence, Sec. 297.

If, however, it is the proper construction that the language designates lots 3 and 4, block 7, in the original plat, etc., then there is a description true in part, but not true in every particular.

The first clause refers to "premises now actually occupied by the insured," which in fact were in Ewing's addition. It was shown that the insured occupied no other property, and the latter clause, if construed to refer to the original plat, was a false description and may be rejected according to the maxim, "Falsa demonstrat; non nocet." Ib. Sec. 301; Sharp v. Thompson, 100 Ill. 447.

In Am. Cent. Ins. Co. v. McLanatham, 11 Kan. 533, the property insured was described as " his two-story frame dwelling occupied by him, situate southwest corner Second and *Vine* streets, Leavenworth."

As a matter of fact, the house was on the corner of Second and *Elm* streets. It was held by the court: " In such case the contract is not void for uncertainty, nor is there need of applying for a reformation of the contract, provided it appears, either from the face of the instrument or intrinsic evidence, which is the true and which the false description." The opinion, by Brewer, J., proceeds at some length, citing authorities and discussing the question involved, but further quotation is unnecessary.

We are of opinion the defense here interposed, resting upon supposed or actual misdescription of the insured property, must be overruled.

It remains to consider the point vigorously pressed upon us, that the policy was rendered invalid by subsequent mortgages placed upon two items of the personal property covered by the policy.

The items were a stacker, mortgaged to Nichols & Shepherd, and a sheller, mortgaged to Pegram. The verdict of the jury evidently excluded their value, and the company is thereby relieved from its contract to that extent. It is urged, however, that the effect of thus incumbering a part of the insured property is to vitiate the whole policy.

The condition relied upon is as follows:  *  *  *  " or, if the property shall hereafter become mortgaged or incumbered  *  *  *  then  *  *  *  this policy shall be null and void." Here, again, it is to be noticed that the language employed is the language of the company, and the condition is invoked for the purpose of working a forfeiture, in order that the company may escape liability under its contract, and the rule of strict construction must be applied. It is not provided that if the property, *or any part* of it, shall become mortgaged, but if *the property* shall, etc.

In terms, the condition has reference to an incumbrance upon *all* the property; and applying the strict construction required by the rule, it would seem quite clear, that had the company desired to assert a forfeiture because of an incumbrance upon a part, it should have used such language as to leave no doubt.

Many authorities are cited by appellant which seem to hold that the contract of insurance is entire and indivisible, and where its conditions are violated by the insured as to part of the property the whole contract is vitiated. The value and force of these cases as precedent will, of course, depend greatly upon the peculiar provision of the policies involved, as well as the reasoning of the court.

It appears, however, that the current of decision is not uniform or harmonious. It seems to be conceded by counsel for appellant that where the insurance is placed separately, that is, a specific sum upon each article, and especially so where a specific rate is paid upon each, the policy would be avoided only as to the articles mortgaged.

A ruling to this effect will be found in Com. Ins. Co. v. Spankneble, 52 Ill. 53, where a part of the insured property so specifically mentioned in the policy was sold, contrary to the conditions of the policy.

Similar adjudications frequently appear in the books. In some of them, separate items of property, in others undivided interests, were alienated. In Sec. 278 of Bliss on Insurance, the author commenting upon such cases, remarks:

" Nor upon principle does it seem to be of any consequence

whether the valuation be separate and distinct or not. Surely a merchant who insures his store and stock in trade or a farmer who insures his barn and contents may recover for the unsold balance of his stock, notwithstanding he daily sells a portion of it. The diminution of insurable interest coincides with a diminution of the right to claim for loss, and relatively there is no change in the situation. To say that the policy is thereby *pro tanto* avoided, is not so correct an expression as to say that the amount which the assured would have the right to recover under it is *pro tanto* reduced.

"Nor will the result be different though it be stipulated that the policy is to be void upon a sale of the whole or any part of the property insured. Nothing short of a sale of the whole will deprive the insured of his right to recover at all," *et seq.* In principle the effect of a sale should be the same as of a mortgage or mere incumbrance of any sort.

Considering the conflict of authority in other States, and as we have been referred to no ruling upon the question by the Supreme Court of this State, we must adopt such view as seems most consistent with reason and best calculated to promote justice in controversies between insurer and insured. The modern tendency of adjudication is in the direction of greater strictness in construing conditions under which forfeitures are set up by the companies and of applying with greater freedom the equitable doctrines of waiver and estoppel.

This tendency has been induced largely by the modern methods of the insurance business, whereby the agents of the companies solicit risks and in order to obtain them make representations and assurances calculated to mislead and to produce a want of care and scrutiny in reference to the language used in applications and policies. Bliss on Ins., Sec. 499; Union Mut. Ins. Co. v. Wilkinson, 13 Wall. (U. S.) 322.

Since the object of an insurance contract is indemnity, no rule is better established than that in all cases the policy is to be most liberally construed in favor of the assured. The spirit of the rule is that where two interpretations equally fair may be given, that which promotes the greater indem-

nity shall prevail, and as the condition is always in language chosen by the company, it should not complain.   Bliss on Ins., Secs. 174–5, *et seq.*

Upon the point here involved we are inclined to hold that as the condition is in terms against a mortgage or incumbrance of "the property" mentioned in the policy, it is not wholly broken by a mortgage of a part of the property, consisting of separate articles and capable of specific valuation, and that in such case the insurance would be vitiated as to the part so mortgaged only.

It is urged by counsel for appellant that there are suspicious circumstances connected with the loss which should be taken into account, and that this consideration justifies the company in its insistence upon all the conditions of the policy.

If there was fraud on the part of the insured he should be made to suffer the just consequences thereof.

Doubtless, this matter was pressed upon the jury as fully as the evidence warranted, and by the verdict they found there was nothing substantial in the suggestion; nor do we find anything so unusual or peculiar as to require special notice.   The action of the court in giving and refusing instructions was consistent with the views above announced.

We are disposed to hold that the judgment is responsive to the merits, and finding no important error in the record it will be affirmed.

*Judgment affirmed.*