Wiuuiams, J.
The policy of insurance contains the provisions that, “if the assured is not the sole and unconditional owner of the property, or if any building intended to be insured stands on ground not owned in fee simple by the assured,” the policy “shall become void, unless consent in writing, by the company, be indorsed thereon.” The policy was issued without any written application signed by the assured, and the insurance was solicited, as the evidence shows, at the request of the company’s agent, by a third *319 person, on whose report the agent made up the application on which the policy was issued. The assured made no statement, nor was any requested, in regard to the ownership or title of the ground on which the house referred to. in the policy, stood; and it does not appear that there was any intentional concealment of the title, or of any fact material to the risk. It was shown by the evidence, that the fee simple of the land on which the insured building stood, was vested in Hammond Coleman, a’member of the firm of H. Coleman & Co., and his wife, who was not a member of the firm; but, that several years previous to the date of the policy, Hammond Coleman executed a deed for the land, directly to his wife, without the intervention of a trustee, in which the following provision is contained: “This deed is not to take effect until my death. This deed is in compliance with my will heretofore made.” The co-partnership of H. Coleman & Co., when the ¿insurance was effected, and at the time-of the fire, consisted of Hammond Coleman, Adam Venters and Henry E. Coleman; and the actual value of the stock of goods and merchandise covered by the policy, exceeded the valuation therein set forth.
The court instructed the jury, that their inquiry in regard to the title to the land on which the store-house stood must he: “Did the plaintiffs — not Hammond Coleman — have such (fee-simple) estate in this land upon which the building stood? It is not enough to satisfy this provision, that Hammond Coleman, one of the plaintiffs, had a life estate in the land. It is hot enough that he alone had an interest in the land. This would not constitute an estate in fee-simple. If you should find that he has an estate in fee-simple in the land, still it must be the' insured who must have this estate in fee-simple in the land to satisfy this provision, and therefore, if you find from the evidence that thé plaintiffs were not the owners in fee-simple of the land upon which the store building stood, then this policy is void and the plaintiffs cannot recover in this action.” The court further instructed the jury as follows: “This contract, gentlemen, is termed in law, an entire contract, and if you find that there has been a breach of any condition of this contract to which I have *320 called your attention, it violates the policy, renders it void, and nothing can be recovered for either building or goods destroyed.”
The- effect of the instructions were, that if the fee-simple title to the land on which the store house was situated, was not vested in the co-partnership of H. Coleman & Co., but was in Hammond Coleman, a member of the co-partnership, the policy of insurance was void, and the plaintiffs could not recover, either for the loss of the building, or of the goods. These instructions were excepted to by the plaintiffs, who contend they were erroneous, and, on account of which, the judgment should be reversed. The principal ground of the contention is, that the contract of insurance evidenced by the policy, is so far severable, as to entitle the plaintiffs to recover for the loss of the goods, though they may not be entitled to recover for the loss of the building by reason of the state of the title to the land on which it stood.
Whether such a contract is so severable, is a question upon which the adjudications of courts of the highest respectability are in direct conflict. The following are some of the cases which hold the contract to be entire: Barnes v. Insurance Co., 51 Me. 110; Havens v. Insurance Co., 111 Ind. 90; Cuthbert v. Insurance Co., 96 N. C. 480; Bank v. Insurance Co., 57 Conn., 335.
On the other hand, such contracts are held severable, in the following, and other cases: Insurance Co. v. Spankneble, 52 Ill. 53; Insurance Co. v. Walsh, 54 Ibid, 164; Loehner v. Insurance Co., 17 Mo. 247; Koontz v. Insurance Co., 42 Ibid, 126; Insurance Co. v. Lawrence, 4 Metc. Ky. 9; Merrill v. Insurance Co., 73 N. Y. 452; Schuster v. Insurance Co., 102 N. Y. 260. And such, we understand to be the effect of the decision in Clark v. Insurance Co., 6 Cush. 342. There, the policy, for a gross premium, insured the plaintiff’s “Tavern House,” to the amount of $2,200, and his shop, valued at $300. The act of incorporation of the defendant provided, “that when any property insured by this company shall in any way be alienated, the policy shall thereupon be void, and should be surrendered to the directors, to be cancelled.” The *321 shop was alienated by the assured, and the “Tavern House” was afterwards destroyed by fire. It was held', that the alienation of the shop, did. not prevent a recovery for the loss of the tavern. The court say, “The next ground taken by the defendants is, that the shop which was insured in the same policy had been alienated by the plaintiff, and that this is such an alienation as will avoid the policy. But the shop was valued separately, and was inshred separately, as a separate, distinct,, independent subject of insurance, though insured in . the same policy. The alienation of the shop would no doubt avoid the policy pro tanto, and only pro tanto. The tavern house and shop being insured separately, the alienation of one would no more affect the insurance on the other, than if they had been insured in separate policies.” In the case of Insurance Co. v. Walsh, cited above, two houses were embraced in the- same policy, and insured for different sums for a gross premium paid, the policy providing, that if the. insured premises should remain vacant for a certain time without notice to the companjr, the policy should become void; and it was held, that the fact that one of the buildings remained thus vacant without notice to the insurer, would not invalidate the policy as to the other. The action in Loehner v. Insurance Co., 17 Mo. 247, was upon a fire policy covering a dwelling-house and furniture therein. It was held, “A policy may be void in part and valid in part, if the subject-matter is capable of being separated; and, although a failure to. disclose an incumbrance would avoid the policy as to the house insured, it would not avoid it as to furniture insured in the same policy, but separately appraised, unless the' fact concealed was material to the risk.” Koontz v. Insurance Co., 42 Mo. 126, was a case where a policy of insurance upon a certain livery stable, was made to cover both personal and real property. The application of the assured contained a false warranty touching incumbrances upon the real estate; and it appeared that the personal property was separately appraised, and there was nothing to show that the representations as to the incum-brances upon the stable, formed any inducement to the execution of the policy covering the personal property. The *322 court held, that the assured might recover the value of the latter, although the policy was rendered void as to the real estate by reason of such false warranty. The case of Insurance Co. v. Lawrence, 4 Metc. Ky. 9, is much like the one before us. There, the appellant, (company) fo.r a premium of $14.00, insured J. B. Lawrence & Co. against loss by fire, from the 25th of May, 1858, to the 25th of May, 1859, “to the amount of $200.00 on their frame storehouse, situated on the Ohio river, in Gallatin county, Kentucky, known as Jackson’s landing, and $1,200 on the stock of goods in said storehouse.” The premises and goods were destroyed by fire on the 5th of April, 1859, and suit was brought on the policy for the value of the goods, but not for the loss of the building. One defense was, that Kawrence & Co., when they obtained the insurance represented themselves to be the owners of the house, when in fact they were not, which, by the terms of the policy rendered it void. But the court held, that “in the absence of proof that the plaintiffs procured the insurance upon the house for a fraudulent purpose, or that their supposed interest in the house induced the defendant to insure the goods,” the insurance on the goods was not vitiated, and the plaintiff had judgment.
In the case of Merrill v. Insurance Company, 73 N. Y. 452, the policy, for one premium, insured the plaintiff against loss or damage by fire to the amount of $6,000,00, as follows: “$1,000.00 on dwelling-house and wood-house, if attached, $800.00 on household furniture therein, $200.00 on provisions, etc., therein,” and various other items of property described in the policy, each having a specific valuation therein set forth. The policy contained a condition that, if the property insured was incumbered by mortgage or otherwise, unless so represented in the application, the policy should be void; also, that if it should become incumbered by mortgage, judgment, or otherwise, the policy should be void until the written consent of the company was obtained. The real estate was incumbered, and that fact was set up in defense of the action on the policy. It was claimed by the defendant, that it. not only avoided the policy as to the building insured, but also as to the *323 chattel property; and whether it did or not, it was conceded, depended upon whether the contract was entire or severable. In a well considered opinion, Judge Fou-•ger, after commenting upon various decisions on the subject, discusses the question on principle, and in the •course of the discussion, says: “It is plain from the fact of a separate valuation having been put by the parties upon the different subjects of the insurance, that they looked upon them as distinct matters of contract. The effect of a separate valuation was to make them so. No matter how much value there might have been in any one of those subjects, even to the whole amount of the policy, had it been totally destroyed, the defendants could not have been made liable to an amount greater .than that named in the policy as the valuation of it. Thus it was, at the inception of the contract, distinguished from the other subjects of insurance, and the contract so made as to be capable of application to it alone. So too, if but one of the subjects of insurance had been burned, the defendants {ceteris parabus), could not have avoided liability to pay for that, up to the value put upon it; and if not wholly destroyed, but so far damaged as to reach in deterioration- the value put upon it in the policy, the defendants would have to pay that damage; and that subject would no longer form a part of the general matter insured, and hence not a part of the continuing contract. Thus, there. would of necessity be a severance of the contract, worked out by the operation of its own terms. Again, the principle, in the case of a contract about several things, but with a single consideration in gross, is this, that we are not able to say that the party would have agreed for one, or for more than one yet less than all of them, without he could at the same time acquire a right to have them all. But our daily experience and observation shows that "an insurance company is as ready to insure buildings without insuring the contents, and the contents without insuring' the buildings, as to insure them together; so that that principle does not press so hard in considering such a contract as that before us. Besides, it is a rule that an agreement embracing several particulars, though made at one time, and about one *324 affair, may yet have the nature and operation of several .different contracts; as when th^ admit of being separately executed and closed, as we have instanced just above, where the contract may be taken distributively, each subject being considered as forming the matter of a separate agreement after it is so closed; per WASHINGTON, J., Perkins v. Hart, 11 Wheat. 237-251; Rodemar v. Hazlehurst, 9 Gill. 294. In our judgment this rule applies fitly to the contract in hand. It admits of being separately executed and closed as to each of the separate subjects of insurance. When one species of the property insured is burned, a contract to insure as to that, may be performed as to that alone. The insured has paid the premium. A fire doing damage to that subject, the damage may be paid for by the insurer, and that subject be thus put out of the contract, while it remains in Jie7’i as to all the other subjects named in it. When there are several subjects of insurance (as there are fourteen here) separately valued, on which a gross sum is insured not exceeding the aggregate of that valuation, for the insurance of which a premium in gross is paid, it is easy to see what is the rate of premium on the whole valuation, and wha't is the amount of premium on each subject insured. This being so, it seems fanciful to say, that if the facts thus easily reached were stated in detail in the contract it would be severable, while not being specifically spread out it is entire. If there were anything in the terms or nature of the particular contract, or in the circumstances of the case, or in the nature of the different subjects of the insurance, from which it was to be inferred that the insurer would not have been likely to have assumed the risk on one of several of them, unless induced by the advantage and profit of having a risk on all, that would be a rational cause for deeming the contract entire. But when for aught that appears, it is indeed as likely that the insurer would have taken a risk upon any one, or any few, of the subjects insured, at the same rate oi; premiun as upon the whole, and has in the policy so separated the subjects, and so singled them out by a specific valuation, as that there is no difficulty in distinguishing the subject from the rest, and *325 closing the contract as to that separately, and carrying forward the contract as to the rest, it does result that the contract is severable in practical operation, and hence, in law. And so also, that though there may have been some conduct of the insured as to some of the property, not evil in itself, ■but working a breach of a condition in its letter, the effect of that breach may be confined to .the insurance upon that property, the contract as to that be held avoided, and as to. the other subjects be held valid.”
Forfeitures do not readily find favor in the law, and courts are reluctant to declare and enforce them, if, by reasonable interpretation it can be avoided. It is not likely that, in this case, the small amount of insurance on the store-house constituted any inducement for the insurance placed upon the stock of goods; and it does not appear, that the rates upon these classes-of property .were different, nor how it could make any difference if they were, since the only effect, in this respect, of holding the contract sever-able is, that the insurance company is enabled to retain the whole of the premium, which it accepted as the consideration for the insurance of all of the property, for the lesser risk on part of the property only; and it is not to be presumed, that the premium for the insurance of part only of the property, would exceed that accepted for the risk on all of it. It was not shown at the trial that the plaintiffs were guilty of any misrepresentation or intentional concealment concerning the title to the land on which the store-house stood. No inquiry was made of them about it. The subj ect was not a matter of negotiation between the parties in effecting the insurance, and the plaintiffs were ignorant of the condition, for the breach of which the company claims the right to forfeit the whole policy. If the position taken by the company be correct, the condition was broken when the policy was issued; and there was, therefore, no consideration for the premium that was- paid, for no risk attached; and yet, the company, while asserting the invalidity of the contract, holds on to its fruits. - This is not a very consistent position, nor a very just one. A just result is reached, and, as we think the lawful one, by holding, as we do, that *326 the contract of insurance in this case is severable, and the breach of the condition as to the title of the land, does not ■defeat the plaintiff’s right to recover for the loss of the stock of goods insured by the policy in suit. It follows, that in our view of the case, the court erred in the instructions we have referred to, for which error the

Judgment is reversed.