ROCHESTER LOAN & BANKING COMPANY ET AL. V. LIBERTY INSURANCE COMPANY.

FILED APRIL 4, 1895.    No. 6214.

1. **Insurance:** PROOFS OF LOSS: WAIVER. An insurance contract provided that the policy should be void if the interest of the insured in the premises was other than unconditional and sole ownership; if the insured premises be or become vacant or unoccupied and so remain for ten days; that in case of a fire the insured should furnish the insurer proof of loss. In a suit upon such policy the insurer interposed the defense that the insured did not furnish proof of loss as required by the policy. An affidavit made by the insured and furnished to the insurer, containing certain statements concerning the fire, set out in the opinion, and *held* to substantially comply with the provision of the policy requiring the insured to furnish the insurer proof of loss; (2) that the insurance company, by refusing to pay the loss and defending the action on the ground that the policy in suit was not in force at the date of the loss, thereby waived the furnishing

to it of any proof of loss whatever. *Dwelling House Ins. Co. v. Brewster*, 43 Neb., 528, and cases there cited, followed.

2. ———: TITLE TO PROPERTY: INSURABLE INTEREST.    A second defense of the insurer was that the insured at the date of the issuance of the policy was not the sole and unconditional owner of the insured real estate.    *Held*, (1) That this issue was one of fact for determination by the jury, and the district court erred in not submitting it to them.    (2) If, by a loss, the holder of an interest in property is deprived of the possession, enjoyment, or profit thereof, or a security or lien resting thereon, or other certain benefits growing out of or depending upon such property, he has an insurable interest therein. *German Ins Co. v. Hyman*, 34 Neb., 704, followed.    (3) It seems that where a policy is issued to one who holds the legal title to real estate, where no inquiries are made as to whether any other person is interested in such property, and no representations are made by the insured further than that he is the owner of the premises, that it is not a defense to the insurance company, in an action on such policy, that the insured, though holding the legal title to the premises, was a mere trustee for an undisclosed beneficiary.

3. ———: VACANT PROPERTY: KNOWLEDGE OF COMPANY: ESTOPPEL.    The third defense of the insurance company was that the insured property, at the time of the issuing of the policy in suit, was vacant; and at the date of the fire had been vacant and unoccupied for ten days.    The insured admitted the facts of the defense, but pleaded in avoidance thereof that the insurer issued the policy in suit with actual knowledge of the fact that the insured property was then vacant and unoccupied.    *Held*, (1) that the provision in the policy rendering it void in case the insured property was at the date of the policy or should afterwards become vacant or unoccupied was inserted therein for the benefit of the insurer; (2) that the existence of the vacancy at the date of the issuance of the policy did not render the policy in suit void but voidable at the election of the insurer; (3) that as the insurer issued the policy in suit with actual knowledge of the fact that the insured premises were at the time vacant and unoccupied, it is now estopped from alleging such vacancy as a defense to an action on the policy; (4) that the knowledge of the agent of the insurance company that the property insured was vacant at the date of the issuance of the policy in suit was the knowledge of the company.

ERROR from the district court of Douglas county.    Tried below before KEYSOR, J.

See opinion for statement of the case.

*James H. Macomber*, for plaintiffs in error:

The company made defense upon the merits of the case, contending and answering that the policy was void, whereby it cannot now be heard to allege and rely upon a want of proof of loss. (*Phenix Ins. Co. v. Bachelder*, 32 Neb., 490.)

Oral testimony is not admissible to show that the title was held in trust. (*Bicknell v. Lancaster City & County Fire Ins. Co.*, 58 N. Y., 677; *Ayers v. Hartford Fire Ins. Co.*, 17 Ia., 188; *German Ins. Co. v. Hyman*, 34 Neb., 704.)

The insurer had an insurable interest in the property. (*Phenix Ins. Co. v. Bawdre*, 67 Miss., 620; *May, Insurance*, sec. 81; *Bicknell v. Lancaster City & County Fire Ins. Co.*, 58 N. Y., 677; *Phœnix Ins. Co. v. Mitchell*, 67 Ill., 43; *German Ins. Co. v. Hyman*, 34 Neb., 704; *Warren v. Davenport Fire Ins. Co.*, 31 Ia., 464; *McDonald v. Black*, 20 O., 185; *Hancox v. Fishing Ins. Co.*, 3 Sumner [U. S.], 132; *Western Horse & Cattle Ins. Co. v. Sheidle*, 18 Neb., 495; *Hoose v. Prescott Ins. Co.*, 84 Mich., 309; *Hall v. Niagara Fire Ins. Co.* 53 N. W. Rep. [Mich.], 728.)

The vacancy of the building for ten days just prior to the fire does not work a forfeiture of the policy. (*Springfield Ins. Co. v. McLimans*, 28 Neb., 850; *Billings v. German Ins. Co.*, 34 Neb., 502; *Menk v. Home Ins Co.*, 76 Cal., 51; *Home Ins Co. v. Gilman*, 112 Ind., 7; *Bonnert v. Pennsylvania Ins. Co.*, 129 Pa. St., 558; *Newman v. Covenant Mutual Ins. Association*, 76 Ia., 56; *Aurora Fire & Marine Ins. Co. v. Kranich*, 36 Mich., 289; *Bennett v. Agricultural Ins. Co.*, 106 N. Y., 243; *German Ins. Co. v. Rounds*, 35 Neb., 752; *England v. Westchester Fire Ins. Co.*, 51 N. W. Rep. [Wis.], 954; *Devine v. Home Ins. Co.*, 32 Wis., 471; *Dickinson v. State*, 20 Neb., 81; *Helme v.*

*Philadelphia Life Ins. Co.*, 100 Am. Dec. [Pa.], 621; *Hoffman v. Ætna Fire Ins. Co.*, 32 N. Y., 405.)

*Jacob Fawcett, contra:*

The policy was void because the insured was not the owner of the property. (*Henning v. Western Assurance Co.*, 42 N. W. Rep. [Ia.], 308; *Grigsby v. German Ins. Co.*, 40 Mo. App., 276; *Trott v. Woolwich Mutual Fire Ins. Co.*, 83 Me., 362; *Clark v. Dwelling House Ins. Co.*, 81 Me., 373; *Pelican Ins. Co. of New Orleans v. Smith*, 9 So. Rep. [Ala.], 327; *Barnard v. National Fire Ins. Co.*, 27 Mo. App., 26; *De Armand v. Home Ins. Co.*, 28 Fed. Rep., 603; *Crescent Ins. Co. v. Camp*, 64 Tex., 521; *Lasher v. St. Joseph Fire & Marine Ins. Co.*, 86 N. Y., 423; *Mers v. Franklin Ins. Co.*, 68 Mo., 127; *Hinman v. Hartford Fire Ins. Co.*, 36 Wis., 159; *Columbian Ins. Co. v. Lawrence*, 2 Pet. [U. S.], 25; *Day v. Charter Oak Fire & Marine Ins. Co.*, 51 Me., 99; *Denison v. Phœnix Ins. Co.*, 52 Ia., 457.)

Vacancy without the consent of the company indorsed upon the policy renders the same void. (*Royal Ins. Co. v. Lubelsky*, 86 Ala., 530; *Hotchkiss v. Home Ins. Co.*, 58 Wis., 297; *Ins. Co. of North America v. Garland*, 108 Ill., 220; *Newmarket Savings Bank v. Royal Ins. Co.*, 150 Mass., 374; *Evans v. Queen Ins. Co.*, 31 N. E. Rep. [Ind.], 843; *England v. Westchester Fire Ins. Co.*, 51 N. W. Rep. [Wis.], 954; *Boyd v. Vanderbilt Ins. Co.*, 16 S. W. Rep. [Tenn.], 470; *Herrman v. Adriatic Fire Ins. Co.*, 85 N. Y., 162; *Barry v. Prescott Ins. Co.*, 35 Hun [N. Y.], 601; *Hartshorne v. Agricultural Ins. Co.*, 50 N. J. Law, 427; *Bennett v. Agricultural Ins. Co.*, 50 Conn., 420; *Moore v. Phœnix Fire Ins. Co.*, 64 N. H., 140; *American Ins. Co. v. Padfield*, 78 Ill., 167; *Sexton v. Hawkeye Ins. Co.*, 69 Ia., 99; *Fishe v. Council Bluffs Ins. Co.*, 74 Ia., 676; *Cook v. Continental Ins. Co.*, 70 Mo., 610; *Farmers Ins. Co. v. Wells*, 42 O. St., 519; *Dewees v. Manhattan Ins. Co.*, 35 N. J. Law, 366.)

RAGAN, C.

This action was brought in the district court of Douglas county by L. G. Bangs against the Liberty Insurance Company of the city of New York (hereinafter called the "Insurance Company"). The action was based on an ordinary fire insurance policy issued by the Insurance Company to Bangs on certain real estate situate in the city of Omaha. The Rochester Loan & Banking Company (hereinafter called the "Loan Company") was joined as a party plaintiff because the policy provided that the loss, if any, should be payable to it as mortgagee. At the close of the evidence the jury, in obedience to a peremptory instruction of the district court, returned a verdict in favor of the Insurance Company, and to reverse the judgment of dismissal pronounced on such verdict Bangs and the Loan Company have prosecuted to this court a petition in error.

1. The policy in suit contained among other things the following provisions : That the policy should be void if the interest of the insured in the insured premises be other than unconditional and sole ownership; if the insured premises be or become vacant or unoccupied and so remain for ten days; that if a fire occurred the insured, within sixty days, should render a statement to the company, signed and sworn to by the insured, stating the knowledge and belief of the assured as to the time and origin of the fire, etc. One of the defenses interposed by the Insurance Company to the action was that the insured did not furnish it, the company, "proofs of loss as required by the terms and conditions of said policy of insurance." The fire occurred on the 7th day of November, 1891, and on the 1st day of December, 1891, Bangs made and furnished the Insurance Company an affidavit in words and figures as follows:

"STATE OF IOWA, } ss.
CARROLL COUNTY. }

"I, L. G. Bangs, being duly sworn, depose and say:

That my house on lot 3 of Allen's subdivision of lot 5, Ragan's Addition to Omaha, Nebraska, was destroyed by fire on the night of November 7, 1891; that the causes of the fire are unknown to me; that the damage done to my buildings was about $1,000, and that said building was insured in the Liberty Insurance Company for $900 by policy dated April 28, 1891; that I have made inquiry and am unable to find anything about the origin of the fire. The policy on said buildings was for $800 on the house and $100 on the barn.		L. G. BANGS.

"Subscribed and sworn to," etc.

We remark: (1.) This was a substantial compliance with the terms of the policy requiring Bangs to furnish the Insurance Company proofs of loss. (*Hanover Fire Ins. Co. v. Gustin*, 40 Neb., 828.) (2.) That if Bangs had wholly failed to furnish the Insurance Company any proofs of loss whatever, such failure under the circumstances of this case would afford the Insurance Company no defense whatever to this action. Here, as we shall presently see, the Insurance Company refuses to pay the loss, and defends against this action on the ground that the policy in suit was, at the date of the loss of the insured property, not in force. In *Phenix Ins. Co. v. Bachelder*, 32 Neb., 490, this court, speaking through its present chief justice, NORVAL, said: "The absolute denial by the insurer of all liability, on the ground that the policy was not in force at the time of the loss, is a waiver of the preliminary proofs of loss required by the policy." (See, also, *Western Home Ins. Co. v. Richardson*, 40 Neb., 1.) In *Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473, it was held: "The right of an insurance company to notice of loss is a right which the company may waive; and when the insurer denies all liability for the loss, and refuses to pay the same, and places such denial and refusal upon grounds other than the failure of the insured to give notice of the loss, such denial and refusal avoid the necessity of such notice." (See, also,

*Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473.) The precise question was squarely presented and decided in *Dwelling House Ins. Co. v. Brewster*, 43 Neb., 528, where HARRISON, J., speaking for this court to the point, said: "Proofs of loss required by a condition of an insurance policy are waived when the insurance company denies any liability for the loss on the ground that the policy was not in force at the date of the loss." We conclude, therefore, that the Insurance Company waived the defense under consideration, in view of the fact that it defended the action on the ground that the policy was not in force at the date of the loss; and if the Insurance Company had not waived such defense, that the evidence establishes that the insured sufficiently complied with the provisions of the policy in reference to furnishing the Insurance Company proofs of loss.

2. The second defense of the Insurance Company was that Bangs, at the time of the issuance of the policy in suit, was not the unconditional and sole owner of the real estate insured; that such real estate was in fact the property of the Loan Company, the title to which property was held in trust for it by Bangs. The policy in suit was issued on the 28th of April, 1891. It is undisputed that prior to the 21st of April, 1891, the Loan Company was the owner and held the legal title to the insured real estate. On the 21st day of April, 1891, the Loan Company, at its home office in the state of New Hampshire, executed to Bangs an absolute warranty deed for this property, which was recorded in the office of the register of deeds some time in the following May. On the trial of this action Bangs swore that he was the owner of this real estate and had been since the date of his deed, and that he purchased it of the Loan Company at private sale. The president of the Loan Company testified on the trial that Bangs was the owner of the property. We are unable to understand upon what theory the learned district judge reached the conclusion, if he did reach such conclusion, that this evidence

was insufficient to establish that Bangs was the unconditional owner of the insured property. The president of the Loan Company and Bangs, at the time of the issuance of the policy in suit, resided in Carroll, Iowa; and Bangs admitted in his testimony that he had never seen this property, and that he did not furnish the money which paid the insurance premium. The evidence of the president of the Loan Company was that he or the Loan Company took out the insurance on the property in the name of Bangs, and that he or the Loan Company paid the premium; that he had corresponded with certain real estate agents in the city of Omaha for the purposes of having them effect a sale of this property and to procure a tenant for the property and collect rents. But when it is remembered that the Loan Company had a mortgage upon this real estate, then its conduct in the premises was entirely consistent with Bang's ownership of the property. Nor are we able to understand how Bangs could be deprived of the title to his property because a person holding a mortgage on it should insure it in Bangs' name for the mortgagee's benefit. In any event this evidence, and the effect of it, was not for the learned district court but for the jury, and had the court permitted this case to go to the jury, and it had returned a special finding that Bangs, at the time the policy in suit was issued, was not the unconditional owner of the real estate, the evidence in this record would not support such a finding.

Considerable stress is placed by counsel for the Insurance Company upon the fact that it does not appear from the evidence what, if any, consideration Bangs paid the Loan Company for this property, but we do not think that is a matter which concerns the Insurance Company. The Loan Company may have given its property to Bangs, and if so, he would nevertheless be the owner of it. Indeed, it would seem that had the Loan Company conveyed the title to this property to Bangs without consideration and for the fraudulent purpose of placing it beyond the reach of the

Loan Company's creditors, that that would not afford any defense to the Insurance Company. *German Ins. Co. v. Hyman*, 34 Neb., 704, was an action on an insurance policy issued on a stock of millinery to Mrs. Hyman. The insurance company defended on the ground that Mrs. Hyman was not the owner of the goods insured and destroyed; that they had been purchased with the money and proceeds of property given her by her husband for the purpose of defrauding his creditors. POST, J., in discussing and overruling this defense, said: "Suppose plaintiff in error were a trespasser instead of an insurer and was called upon to answer for a conversion of the property. Would it be heard in defense to say that the title of the insured had been acquired in fraud of the rights of a third party? Certainly not. Nor is there any rule of law or morals which will sanction such a defense in this action. It is said that had the plaintiff in error known of the business record of Louis Hyman, that is, the fact that he had once made an assignment, it would have refused to insure the property. It is a sufficient answer to this claim that there is no rule of law which imposes upon the owner of property the duty to volunteer such information to an insurance company. An interest, to be insurable, does not depend necessarily upon the ownership of the property. It may be a special or limited ownership disconnected from any title, lien, or possession. If the holder of an interest in the property will suffer loss by its destruction he may indemnify himself therefrom by a contract of insurance. If, by the loss, the holder of the interest is deprived of the possession, enjoyment, or profit of the property, or a security or lien resting thereon, or other certain benefits growing out of or depending upon it, he has an insurable interest." From this it seems that possession with claim of ownership of personal property invests one with an insurable interest therein; and that if an insurance company insures such property, and a loss occurs, it cannot defend against the payment of such loss on

39

the ground that the insured party held the property in trust for some other person, even to enable such third person to consummate a fraud, where it effected such insurance without inquiry as to the insured's actual title, and without the express and positive false representations of the insured as to his actual title believed in and acted upon by the insurance company. And it seems that where a policy is issued to one who holds the legal title to real estate,. where no inquiries are made as to whether any other person is interested in such property, and no representations are made by the insured further than that he is the owner of the property, that it is not a defense to the insurance company, in an action on such policy, that the insured, though holding a legal title to the premises, was a mere trustee for an undisclosed beneficiary. If any other person than Bangs has any interest or ownership in this real estate, or any part of it, it does not appear from the evidence before us, further than the lien thereon by the Loan Company by virtue of its mortgage. We are not called upon to decide, nor do we decide, whether the provision in the policy re- quiring the insured to be the unconditional and sole owner of the insured property is complied with when such prop- erty is real estate and the insured has the legal title thereto,. even if it should develop that he held such title in trust for the use of some other person. That question is not be- fore us.

3. The third defense of the Insurance Company was that the insured property, at the time of the issuance of the policy, was vacant and at the date of the fire had been va- cant and unoccupied for ten days. The reply of the in- sured admits that the property was vacant as stated, but pleads in avoidance of this defense a waiver or estoppel thereof by the company. The provision in an insurance policy rendering it void because the insured property is, at the time of its insurance, or shall afterwards become, vacant and unoccupied for a certain time, is inserted therein

for the benefit of the insurer; it is a provision which the
insurer may waive; and the existence of the vacancy at the
date of the insurance or the happening of the vacancy after-
wards does not render the policy void but voidable at the
election of the insurer.   On the 20th day of April, 1891,
the president of the Loan Company at Carroll, Iowa, ad-
dressed the letter to the agents of the Insurance Company
in Omaha, Nebraska, in which he made this inquiry:
"Please let me know what rate you will give me for three
years' risk on the following properties: One thousand dol-
lars on a one and one-half story frame dwelling house, with
addition, on lot 3, Allen's subdivision of lot 5, Ragan's.
Addition to Omaha?"   This is the property covered by
the insurance policy in suit.   On the 25th of April, 1891,
the agents of the Insurance Company answered this letter,
acknowledging its receipt, stating that the rate for one
year was fifty cents, for three years one per cent, for five
years one and one-half per cent, and then said: "The one
and one-half story on lot 3, Allen's subdivision of lot 5,
Ragan's Addition, we would not wish to carry more than
$800 on this dwelling.   The last described dwelling is va--
cant, but the barn is occupied."   On the 27th of April the-
president of the Loan Company wrote to the agents of the-
Insurance Company as follows: "Please send me policy
on the one and one-half story dwelling on the insured prop-
erty, $800 on the dwelling and $100 on the barn.   Make
the policy in the name of L. G. Bangs, present owner,
with mortgage clause loss, if any, payable to the Rochester-
Loan & Banking Company.   Send policy to me and I
will return draft for premium."   In pursuance of this cor--
respondence the agents of the Insurance Company issued
the policy in suit and on the 29th of April, 1891, enclosed
it in a letter to the president of the Loan Company at Car--
roll, Iowa.   On the 30th of the same month the president
of the Loan Company transmitted to the agents of the-
Insurance Company the premium on the policy.

It would seem almost unnecessary to cite authorities to show that since the insured property was vacant and unoccupied at the date of the issuance of the policy in suit, which fact was actually known by the Insurance Company, and with that knowledge actually before it, it chose to insure the property, that in doing so it elected to and did waive the conditions in the policy that the same should be void if the property was at the time it was insured vacant. The knowledge of the agents of the Insurance Company that the property was vacant at the date of the issuance of the policy was the knowledge of the company. Notice to an insurance agent who issues a policy, of facts relating to the subject-matter of the insurance, is notice to the company, and if he fails to properly state them in the policy when relied upon and trusted to do so, the company should not be permitted to escape liability on that ground. (*Commercial Ins. Co. v. Spankneble,* 52 Ill., 53.) In *Williams v. Niagara Fire Ins. Co.,* 50 Ia., 561, it was held: "Notwithstanding the policy provided that if the premises became unoccupied during the life of the policy, without the written consent of the company indorsed thereon, the policy should be void, it was held that where an agent insured an unoccupied building, and received the premium therefor, the company was estopped from denying that the policy had a legal existence." And in *Aurora Fire & Marine Ins. Co. v. Kranich,* 36 Mich., 289, it was held: "The provision in a policy that 'if at any time during the continuance of this policy  *  *  *  the insured property  *  *  *  shall become vacant or unoccupied' the insurer shall be absolved from all liability, is held to have no application to the case of buildings that are vacant at the time the policy is issued, the insurer having notice of the fact." To the same effect see *Short v. Home Ins. Co.,* 90 N. Y., 16; *Bennett v. Agricultural Ins. Co.,* 12 N. E. Rep. [N. Y.], 609.

The evidence in the record then does not sustain the de-

fense of the Insurance Company that the policy in suit was not in force at the date of the loss because of the fact that the insured property was and had been vacant for ten days at the time of its destruction and was vacant at the time the policy was issued; but the evidence does sustain the plea of confession and avoidance interposed to this defense by the insured that the company, by its conduct in insuring the property, knowing that it was vacant at the time, had estopped itself from interposing this defense. It must be borne in mind that the condition of the property, so far as occupancy is concerned, was the same at the time it was destroyed as at the date of its insurance. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.