ROBERT G. HARRIS *vs.* NORTH AMERICAN INSURANCE COMPANY.

Essex.   November 8, 9, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Insurance,* Fire.   *Evidence,* Extrinsic affecting writings.   *Practice, Civil.*

A building in process of construction is not an "unoccupied building" within the meaning of that term included in a list of prohibited risks furnished by a fire insurance company to its agents.

A provision in a policy of fire insurance, that the policy shall be void if the insured premises become vacant by the removal of the owner or occupant and so remain vacant for more than thirty days without the assent in writing or in print of the company issuing the policy, cannot be waived by an oral agreement of an agent of the company.

In an action on a policy of fire insurance on a dwelling house, which is not described either as occupied or unoccupied, the plaintiff may show by oral evidence that the insured building was a dwelling house in process of construction which could not be inhabited until completion.

A policy of fire insurance in the Massachusetts standard form contained the usual provision that it should be void if the premises thereby insured should become vacant by the removal of the owner or occupant, and should so remain vacant for more than thirty days without the assent in writing or in print of the company.   The policy was issued to the owner of a house in process of construction described as a "frame dwelling house" and contained permission "for mechanics to work in and about said premises for thirty days from date," which subsequently was extended for a further period, at the end of which the

contractor turned over the house to the owner completed with the exception of water connections for which it was necessary to wait until water pipes were extended in the street on which the house stood. While the owner was waiting for an appropriation to be made by the town for this purpose the house remained empty for more than thirty days, but the owner lived in another house on the same tract of land about one thousand feet from the insured building which was in sight of himself and his family and which he passed daily in going to and from his work. Before the date of the town meeting at which the appropriation for the extension of the water pipes was expected the house was destroyed by fire. In an action on the policy the defences were set up of a forfeiture of the policy by the premises becoming vacant or by an increase of risk. *Held*, that the house had not become vacant by the removal of the owner or occupier within the meaning of the policy, and that the question whether allowing the house to remain vacant after the mechanics left while the plaintiff was exercising the supervision shown by the evidence increased the risk of fire was an issue of fact which properly should be submitted to the jury, if the defendant wished to go to the jury on this branch of the defence.

In an action on a policy of fire insurance where the defendant's answer contains a general denial and allegations of two specific defences of forfeiture under the terms of the policy, and where neither in its pleadings nor during the trial has the defendant set up the defence that the action cannot be maintained because the plaintiff has not performed the condition precedent of submitting the amount of his loss to arbitration, the defendant at the argument before this court of its exception to a refusal of the judge to rule that upon all the evidence the action cannot be maintained, cannot raise the question of this new defence which if relied upon might have been raised by demurrer or answer and which has not been disclosed during the trial.

CONTRACT on two policies of fire insurance in the Massachusetts standard form issued by the defendant, a corporation organized under the laws of this Commonwealth, on a "frame dwelling house" in Marblehead, one for $3,000 dated October 10, 1901, and the other for $500 dated November 5, 1901. Writ dated July 29, 1902.

The answer contained a general denial, and further alleged that, if any such loss and damage as alleged in the plaintiff's declaration occurred, the premises insured by the policy became vacant by the removal of the owner and occupant during the continuance of the policy and so remained vacant for more than thirty days without the assent in writing or in print of the defendant company, and that the policy thereby became void; and, further, that without the assent in writing or in print of the defendant company the situation and circumstances affecting the risk were by and with the knowledge, advice, agency and consent of the insured so altered as to cause an increase of such risk, and the policy thereby became void.

At the trial in the Superior Court before *Hardy*, J. it appeared that the building insured was destroyed by fire on March 3, 1902; that the building insured was a new two story frame dwelling house in course of construction; that at the time of issuing the first policy the house was about three fourths completed, and at the time of issuing the second policy the house was very nearly completed; that its owner, the plaintiff, intended to occupy the house himself, and then lived in another house on the same tract of land about one thousand feet from the insured building; that on or about November 15, 1901, the building was completed with the exception of making water connections, and was turned over to the plaintiff by the contractor; that for the water connection it was necessary to wait for water pipes to be extended in Jersey Street and from thence to the house.

The agent of the company testified that he knew at the time the plaintiff came to him to effect insurance that the building was in course of construction, and was nearly completed; and that by reason of his own knowledge a mechanic's permit, subsequently extended, was placed on the first policy at the time of effecting the insurance; that he was at the premises about a week after he issued the first policy, but did not go inside the house.

Evidence was introduced by the plaintiff against the objection and exception of the defendant tending to show that the plaintiff had dug a trench on his land for the laying of water pipes from Jersey Street to the house, a distance of two hundred and forty-eight feet, and that before effecting the insurance the plaintiff had made an application to the water board of the town of Marblehead for a supply of water for the house; that before he could obtain the supply it was necessary that the water pipes in Jersey Street should be extended by the town to the land on which the insured building stood; that an appropriation of money by the town for the purpose was necessary, and that the water board was to bring the matter before the town meeting in the March following; that the March meeting of the town did not occur until after the fire which destroyed the building, and that the plaintiff did not intend to occupy the building until after the question of appropriation

at the town meeting had been acted upon; that there was no other supply of water on the premises, and that he was waiting for a water supply before moving into the house. If the appropriation was not voted by the town he intended to build a cistern for his water supply, but not until after the town meeting in March.

Evidence also was introduced by the plaintiff against the objection and exception of the defendant tending to show that these facts were communicated to the agent of the defendant by the plaintiff at the time of making the contract and before the issuing of the first policy of insurance.

During the whole period from the time of effecting the first policy to the time of the fire the building had not been occupied by any one except by the mechanics under the permits; and it was agreed that the building insured was wholly vacant and unoccupied between November 16, 1901, and the date of the fire; but the plaintiff during this time lived in the other house on the premises and was in and about the house insured from time to time, passed by it daily in going to and from his work and had the building in view from his other house by himself and family.

Each policy contained the following printed clause: "This policy shall be void . . . if the premises hereby insured shall become vacant by the removal of the owner or occupant and so remain vacant for more than thirty days without the assent in writing or in print of the company."

The plaintiff was permitted against the objection and exception of the defendant to testify that when he applied for the insurance he informed the agent, one Hathaway, that the premises would not be occupied until a date later than the date of the fire. The defendant objected to this testimony on the ground that it was immaterial and tended to vary a written contract by oral evidence. The only increase of risk relied upon by the defendant in support of its answer was the vacancy and unoccupancy of the building after the mechanics had left it and it had been turned over to the plaintiff. It appeared that the premium generally charged by insurance companies for vacant and unoccupied buildings was more than the rate charged on these policies, and more than the rate charged for occupied buildings.

At the time the policies were issued, Hathaway had received from the company, and had in his possession a printed alphabetical list of risks with the caption " List of Prohibited Risks " which began with " alms-houses," ended with " woolen mills " and included " unoccupied buildings and idle manufactories." But this list was unknown to the plaintiff and was not communicated to him at any time before the fire.

The defendant offered the list in evidence and the judge admitted it against the objection and exception of the plaintiff.

At the close of the evidence the defendant asked the judge to rule as follows :

" 1. The parties made a special provision as to the conditions then existing.  They wrote into the body of the policy the words : ' Permission is hereby given for mechanics to work in and about the insured premises thirty days from date.'

" This permission allows mechanics to have such possession of the house as to make it impossible to occupy the house as a dwelling house while the possession of the mechanics continues ; it therefore included a permission for the house to remain vacant thirty days, so far as a house in and about which mechanics are at work during ordinary working hours can be said to be vacant.

" This was equivalent to saying ' This is our contract in reference to the present condition of the buildings.  Except as modified by this contract the policy is deemed to be, what in other parts it purports to be, a policy of insurance upon buildings now occupied for dwelling purposes.  By our language we have chosen to make a contract relating to property so occupied, except for the short period of thirty days (extended in the first policy to fifty-six days, and expiring in the case of each policy December 4, 1901) during which it may remain insured under this special agreement as unoccupied, or partially unoccupied property.'

" The effect of this arrangement taken as a whole was to leave the rights of the parties after December 4, 1901, the same as if the building had been occupied when the insurance was effected. By the original provisions of the policy it was insured as an occupied building.  The usual provision was inserted as to its becoming vacant and remaining vacant more than thirty days.

Then an exception was written in which took it out of the general provisions of the contract and insured it as a building occupied by mechanics only (to such extent as they occupy it when at work in and about it) up to and including December 4, 1901, but no longer.

" 2. Permission given in the policies for the house to be vacant except for the presence of mechanics working about it having expired December 4, 1901, and the house having been entirely vacant without the assent of the defendant in writing or in print for more than thirty days before the fire in March, 1902, there was a breach of the conditions of the policy before the fire and the policies thereby became void.

" 3. Apart from the fact of the permit for mechanics to occupy the house in this case, if the house had been insured as a dwelling house, with no such permit, when it was in fact vacant, and the company knew when they insured it that it was vacant, that fact would not constitute a waiver of the condition that the policy shall be forfeited if the premises remain vacant thirty days without the assent of the company in writing or in print. A clause making provision for the future cannot thus be waived.

" 4. The agent, Hathaway, had no authority to insure vacant buildings, to grant an oral permit for vacancy or to waive the condition against vacancy by parol.

" 5. Where the waiver relied on is an act of an agent, it must be shown that the agent had express authority from the company to make the waiver or that the company subsequently with knowledge of the facts ratified the action of the agent.

" 6. There is no evidence to sustain a verdict for the plaintiff on either count, and the jury should return a verdict for the defendant upon both counts of the declaration."

The judge refused to give these rulings and the defendant excepted. Thereupon the judge submitted the following issues to the jury directing them to answer the second issue in the negative, there being no evidence other than what might be inferred from the policies themselves that the company had any other knowledge than that of its agent as to the unoccupancy of the building. The evidence upon the first issue was conflicting.

The issues and answers of the jury were as follows:

" 1. Did the insurance agent, Mr. Hathaway, have knowledge

by information from Mr. Harris or otherwise at or before the execution or delivery of the policies that the premises were to be unoccupied between December 4, 1901, and March 3, 1902? Answer. Yes.

"2. Did the insurance company have any actual knowledge at the time of the execution of the policies or before their delivery that the premises were to be unoccupied between December 4, 1901, and March 3, 1902? Answer. No.

"3. What was the loss on the dwelling house including foundations by the fire under the terms of these policies? Answer. $3,500."

Upon receiving the answers of the jury the judge directed the jury to return a verdict for the plaintiff in the sum of $4,039.50, which it was agreed by the parties included interest on the loss or damage found by the jury in answer to the third issue. The jury returned a verdict as directed, and the defendant excepted. The judge reported the case for determination by this court. If his direction, rulings and refusals to rule were correct, or if upon the facts the plaintiff was entitled to a verdict, the verdict was to stand; otherwise, judgment was to be entered for the defendant or such other entry was to be made as justice might require.

*B. G. Davis*, for the defendant.

*J. M. Raymond*, (*E. C. Battis* with him,) for the plaintiff.

BRALEY, J. Upon their face the policies which are in the standard form required by R. L. c. 118, § 60, purport to set forth the full provisions of the contract. The defendant endeavors to avoid payment of the loss which has accrued by showing that the building insured either became vacant for more than thirty days before the fire by the removal of the owner without its written or printed assent, or was left under such conditions as materially to increase the risk. Although completed as a structure, the building when burned never had been occupied as a residence, and at the date of insurance was in process of erection. The local agent of the company by whom the policies were issued was informed by the plaintiff of these general conditions, and that it was his purpose not to occupy the house as a home until a time which was subsequent to the fire, but this knowledge was not otherwise communicated to the defendant.

In the list of prohibited risks which it furnished to its agents "unoccupied buildings" were included, but the exception to a refusal to rule that the agent was thus prohibited from insuring the plaintiff's building calls for no comment, as a new building in process of construction cannot be so classified. But the plaintiff, in dealing with a local agent who was authorized to issue policies and collect premiums was required to take notice that by their terms the scope of his authority did not include the power orally to change the clause of the contracts relating to vacancy. *Harrison* v. *City Ins. Co.* 9 Allen, 231. *Kyte* v. *Commercial Union Assur. Co.* 144 Mass. 43, 46. *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382, 386. Any modification or alteration of this nature could be made only with the written or printed assent of the insurer. *Worcester Bank* v. *Hartford Ins. Co.* 11 Cush. 265. *Northern Assur. Co.* v. *Grand View Building Assoc.* 183 U. S. 308.

Neither could they thus be changed if put upon the ground of waiver arising impliedly from the actual situation of the premises at the time the policies were issued, communicated to him by the plaintiff, but of which the agent independently might have been found to have had knowledge, for this provision referred to a possible future, and not a present use of the property. *Batchelder* v. *Queen Ins. Co.* 135 Mass. 449.

As the agent had no authority to assure the plaintiff that the defendant would not insist upon a strict compliance, he could not, under the doctrine of waiver invoked by the plaintiff, either by assent in words or by conduct, alter or surrender this contractual right of his principal, if it is found to have any application in the present case. *Stone* v. *Howard Ins. Co.* 153 Mass. 475, 480, 481, and cases there cited. *Metropolitan Coal Co.* v. *Boutell Transportation & Towing Co.* 185 Mass. 391, 397.

Having been, however, regularly issued, duly accepted, and the premiums paid, the contracts of insurance became binding upon the company, and the remaining questions are, whether there has been a breach of this particular condition, or an unauthorized increase of risk, either of which would be sufficient to avoid them.

The defendant contends that treating the physical presence of

the mechanics under the permits as a sufficient compliance to satisfy the requirement as to occupancy, yet after they left as the house remained empty and unfurnished for more than thirty days before the fire, the issuance of the permits should be held to have the same modifying effect upon the contracts as the words "permission to remain vacant thirty days without prejudice," found in the policy construed in *Newmarket Savings Bank* v. *Royal Ins. Co.* 150 Mass. 374, 376. But the qualifying phrase there used had reference to and was directly connected with the condition relating to vacancy, and upon combining the two they were held in effect to constitute an agreement to insure the property as unoccupied for a period of thirty days, after the expiration of which it was to be treated as being within the clause relating to unoccupancy.

The permission given the plaintiff here was "for mechanics to work in and about the insured premises thirty days from date", and evidently was designed to prevent a forfeiture which otherwise might arise under the provision as to increase of risk set forth in the body of the policies, where it is said that if without the printed or written consent of the company, "the situation or circumstances affecting the risk shall . . . be so altered as to cause an increase of such risks," they shall become void. *Luce* v. *Dorchester Ins. Co.* 105 Mass. 297, 301.

The burden was on the defendant strictly to prove an avoidance of its liability by showing that the acts of the plaintiff in connection with the insured property amounted to a removal from the house, and produced a forfeiture. *Ferguson* v. *Union Ins. Co.* 187 Mass. 8, 14. *Hitchcock* v. *Northwestern Ins. Co.* 26 N. Y. 68. *Orrell* v. *Hampden Ins. Co.* 13 Gray, 431, 434. *Butternut Manuf. Co.* v. *Manufacturers' Ins. Co.* 78 Wis. 202.

No doubt there is a sound practical distinction recognized in the community between a house that becomes merely unoccupied for a longer or shorter period, though fitted and furnished as a domicil, and one that becomes vacant by the removal of the furniture, and departure of the owner. *Herrman* v. *Adriatic Ins. Co.* 85 N. Y. 162. The words, "become vacant by the removal of the owner or occupant," on which the defendant so strongly relies, have received judicial construction by this court in *Johnson* v. *Norwalk Ins. Co.* 175 Mass. 529, 531, where it is

held that in accordance with this common understanding "they refer to a permanent removal and entire abandonment of the house."

But the house is not described either as occupied or unoccupied, and there being no warranty or presumption of either present or future occupation, parol evidence that it was in process of erection, and hence could not be inhabited in the sense of being a residence until completion did not contradict the written instrument, and was admissible. *Westfield Cigar Co.* v. *Insurance Companies*, 165 Mass. 541, 545. See *Blood* v. *Howard Ins. Co.* 12 Cush. 472; *King Brick Manuf. Co.* v. *Phœnix Ins. Co.* 164 Mass. 291, 294; *Mead* v. *Phenix Ins. Co.* 158 Mass. 124, 125.

The burden was on the plaintiff to prove that the building burned was a dwelling house, and it was open to the defendant to show that it was something else, and hence uninsured. *Thomas* v. *Commercial Union Assur. Co.* 162 Mass. 29, 34.

If it then had appeared that the defendant intended to insure one kind of a building which the plaintiff had described, and the building burned was not of that class there would have been no meeting of the minds of the parties and therefore no contract. *Goddard* v. *Monitor Ins. Co.* 108 Mass. 56.

In describing the designated premises as a dwelling house when taken in connection with his representations, which because they are material under R. L. c. 118, § 21, are incorporated though not expressed in the policies, all that the plaintiff undertook to perform was that when occupied the building should be used for this purpose. *Ring* v. *Phœnix Assur. Co.* 145 Mass. 426, 429. *Cumberland Valley Mutual Protection Co.* v. *Douglas*, 58 Penn. St. 419.

It could have been found by the jury that it was not inaccurate to describe the house as within the class commonly designated as dwelling houses equally when in process of erection as well as when finished, and that there was no misunderstanding concerning the identity of the subject matter, even if a more technically accurate description would have been "a dwelling house now in process of erection which upon completion, and when ready for occupancy will be occupied by the insured." See *Royal Ins. Co.* v. *Lubelsky*, 86 Ala. 530.

While not conceded by the defendant, no satisfactory reason has been advanced whereby in the ordinary course of human affairs it can be said that the plaintiff has removed from a residence he never had furnished or inhabited, although legally in his possession and subject to his direct supervision, being built on his homestead lot.

Indeed, it would be a contradiction of terms, if not absurd to say that the house ever became vacant by the bodily removal of the " owner or occupant."

Recognizing the practical difficulty of sustaining such an argument, the defendant insists that as matter of law the premises became vacant within the meaning of the policies, and relies upon *Wainer* v. *Milford Ins. Co.* 153 Mass. 335, 338, as sustaining the proposition, that in contemplation of the parties removal and subsequent vacancy must be held to have begun at the expiration of the permits.

In that case although the policy was dated January 23, 1889, the dwelling house was not occupied between that date and April 1, 1889, and it was said that, " if the policy was in force from its date, it was therefore rendered void." But it was not necessary to decide this question as the decision turned upon the inquiry as to when the policy took effect, and it was held that it did not become effective by delivery until March 12, 1889. As the fire was on May 12, 1889, it would follow that the house had not been vacant for more than thirty days.

This position, moreover, if anything more was meant than to say that the policy was avoided by an increase of risk caused by the vacancy, is not supported by the cases to which reference is there made. *Lyman* v. *State Ins. Co.* 14 Allen, 329, 334, turns upon the issue whether the act of the plaintiff had increased the risk under a policy which apparently did not contain any clause as to vacancy. While *Kyte* v. *Commercial Union Assur. Co.*, *ubi supra*, also was decided under a policy which provided that it should be void if without the company's assent the risk was increased, and the remaining authority of *Hinckley* v. *Germania Ins. Co.* 140 Mass. 38, rests upon the effect of the act of the assured in keeping a bowling alley and pool table in avoiding a policy for the same reason. This decision, therefore, cannot be considered as decisive of the case now before us.

It having been found that when the policies were issued the agent understood that the insured had not occupied, and could not occupy the dwelling house then being built in the sense of living in it as a home for himself and family until finally ready for occupancy, the clause relating to unoccupancy of the insured premises, as no change appears to have taken place, must be construed in connection with these conditions under which the parties entered into their contracts. *Germania Ins. Co.* v. *Klewer*, 129 Ill. 599.

Even after substantial completion, and while waiting for the necessary addition of some form of service by which water could be supplied it cannot be said that, never having been inhabited by him the house had become vacant because the owner removed therefrom, for such a subsequent condition upon the facts here found manifestly becomes inapplicable. *Ring* v. *Phœnix Assur. Co., ubi supra. Newmarket Savings Bank* v. *Royal Ins. Co., ubi supra,* at page 376, and cases there cited. *Commercial Ins. Co.* v. *Spankneble,* 52 Ill. 53, 60. *Alexander* v. *Germania Ins. Co.* 66 N. Y. 464. *Philadelphia Tool Co.* v. *British American Assur. Co.* 132 Penn. St. 236. *Woodruff* v. *Imperial Ins. Co.* 83 N. Y. 133.

There is a further provision that any increase of the risk by the act and with the consent of the plaintiff avoids them. But the question whether allowing the house to remain vacant after the mechanics left increased the hazard of its taking fire was an issue of fact under the circumstances shown by the evidence offered by the plaintiff of his supervision and care, and which was admissible for this purpose, although the defendant finally did not ask to go to the jury on this branch of its defence. *Allen* v. *Massasoit Ins. Co.* 99 Mass. 160. *Luce* v. *Dorchester Ins. Co.* 105 Mass. 297. *Powers* v. *Guardian Ins. Co.* 136 Mass. 108, 110.

A portion of the evidence to the admission of which the defendant excepted related to the laying in the street by the town of a water pipe with which the house was to be connected, and for which the plaintiff's application to the water board was pending at the date of the fire. This was accompanied by further proof that at the time the insurance was effected under the first policy the agent was informed that the plaintiff's pur-

pose was not to occupy the house until arrangements had been made for supplying it with water, and also that he knew this service could not be provided until a date subsequent to its destruction.

It is now urged that the defendant was prejudiced by the admission of this, as well as other testimony that the plaintiff dug trenches on his land for the pipes, and that the pipe in the street could not be laid unless the town at its annual meeting voted an appropriation, but the evidence cannot be said to have been wholly irrelevant as it had some tendency to support the plaintiff's narrative of his original statements to the agent when obtaining the insurance, and to show that they were not an afterthought.

By the sixth request the defendant in substance asked for a ruling that upon all the evidence the action could not be maintained, and this having been refused it now further contends that compliance with the precedent condition of submitting the amount of loss to arbitration not having been shown, nor its waiver pleaded, the suit is prematurely brought. *Lamson Consolidated Store Service Co.* v. *Prudential Ins. Co.* 171 Mass. 433.

There is, however, not the slightest suggestion in the record that in any form this question was raised, or even alluded to at the trial, and the parties evidently proceeded upon other and distinct issues which are presented by the report.

If the defendant had considered the declaration insufficient for want of proper averments as to this clause in the policies it might have demurred. *Lamson Consolidated Store Service Co.* v. *Prudential Ins. Co., ubi supra.* Instead of doing so it filed an answer containing a general denial, with other specific defences to which reference already has been made, so that after proof of the making of the contracts, and the loss of the insured property by fire, the case was tried on two questions: whether the premises had become vacant within the meaning of the policies, or the risk had been increased.

It plainly appears that the defendant did not, either by a direct request for a specific ruling, or by any form of pleading, explicitly raise the question which it now endeavors to present, and the ruling requested must have been understood by the pre-

siding judge as relating solely to the issues presented and the evidence which had been introduced, and not as including a defence which was not only undisclosed, but which might have been definitely pleaded. If either course had been adopted the plaintiff undoubtedly would have been afforded an opportunity to amend, but in going to trial upon pleadings which in terms did not raise this question, and by the course pursued up to the time when the case was submitted to the jury, the defendant must be deemed to have waived its right to set up this defence. *Edwards* v. *Carr*, 13 Gray, 234, 238. *Goodnow* v. *Hill*, 125 Mass. 587. *Tilden* v. *Greenwood*, 149 Mass. 567. *Lyon* v. *Prouty*, 154 Mass. 488. *Fairman* v. *Boston & Albany Railroad*, 169 Mass. 170. *Oulighan* v. *Butler*, 189 Mass. 287.

By the terms of the report the order must be,

*Verdict to stand.*