Plaintiff, Tona Addia, recovered judgment against defendant, The Globe Rutgers Fire Insurance Company, for $4,147.00, on March 15, 1924, on a fire insurance policy dated October 1, 1922, insuring against direct loss and damage by fire his house on the west side of Industrial Street, in Dunbar, Kanawha County, for a period of one year. The policy was issued by Dunbar Insurance Agency, owned and conducted in that name by W. E. Griffith, agent for defendant Company, and the premium therefor was $186.00, of which $93.00 was paid in cash and the remainder to be paid on time. The house was totally destroyed by fire on December 30, 1922.
The first story of the building insured was designed for store-house purposes and the second story for dwelling purposes; and was totally unoccupied at the time the policy was issued and continued to be wholly unoccupied until it was burned. The policy contained this provision, "Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage occurring . . . . (f) while a described building, whether intended for occupancy by owner or tenant is vacant or unoccupied beyond a period of ten days". By a rider, or paper attached thereto, certain privileges were granted to the assured, among which was the following: "To be vacant or unoccupied for *Page 445 
a period not exceeding thirty (30) consecutive days in any one policy year after the period permitted by the policy conditions". As to a waiver of any of the provisions and conditions the policy contained the following: "No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of an agreement added thereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirements, act or proceeding on the part of this company relating to appraisal, or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereinunder exist or be claimed by the insured unless granted herein or by rider added hereto." These provisions of the policy were duly pleaded by defendant as statements of defense numbered 1 and 2. Plaintiff replied to these defenses by replication under oath to the effect that they were not available to it because, defendant "at the time of issuing the said policy, and at all times thereafter, well knew that the said property was unoccupied, and with full knowledge and notice thereof issued said policy and permitted same to remain in full force and effect at all times thereafter." Exception to this replication in which the plaintiff relies upon waiver and estoppel, was taken on the ground that the affidavit thereto did not say that the matter of reply therein stated would be supported by evidence at the trial, as required by Section 65, of Chapter 125 of the Code. Objection and exception was overruled and the replication allowed to be filed. We do not deem it necessary to pass upon this technical objection, for reasons which will hereinafter appear.
From the evidence it appears that Griffith, about the first of November, 1922, sold his agency to Roy Reed, who continued the agency after that time. When the policy was received at the office of the state agent of defendant in Roanoke, Virginia, the state agent began to make inquiry as to whether the house was occupied or vacant, and the fact that it was vacant seems to have been ascertained by him on November 24, 1922, when the defendant requested its local agent to cancel the policy for that cause. Plaintiff Addia lived in the City of Charleston, and had an agent, one Amos Reed, *Page 446 
who resided in Dunbar, and who was looking after his property and who had procured the policy of insurance. Griffith immediately took up the matter of cancellation of the policy with Amos Reed, Addia's agent, and suggested that a policy be written on the property in another company represented by him, namely, the Netherlands Company, which he said would raise no question about the property being unoccupied; and accordingly a policy was issued for the same amount at the same premium in the Netherlands Company, and the premium paid to defendant Company was transferred to the Netherlands account and so remained at the time of the fire. But Amos Reed, the agent, did not agree to accept a new policy until he could confer with his principal, Addia. After a short delay Griffith and Amos Reed went to Charleston and conferred with Addia about the surrender of the policy and the taking out of a similar policy with the Netherlands Company. Griffith had the Netherlands policy ready for delivery and tendered it to Addia, requesting a surrender of the old policy, for the reason that the house was unoccupied. It appears that Addia did not desire further insurance because he was getting no income from the property, and refused to accept the Netherlands policy and refused at that time to deliver to Griffith the old policy, saying he would mail it to his agent, and in a few days afterwards mailed it to his agent, Amos Reed, at Dunbar for delivery; and it was delivered by Amos Reed to Griffith on the streets of that city, when Griffith says he informed Reed he would take the policy over to Roy Reed who had succeeded him as agent, and he could there get the return premium. The policy was delivered to Roy Reed who marked upon it "cancelled" and immediately sent it to Charleston where it passed through the stamping office, an office maintained by the insurance companies through which all cancelled policies were returned and record made thereof, and from there was sent to the state agent, Stockdell, at Roanoke, reaching him on the 22nd day of December, 1922, where he endorsed upon it "cancelled flat" (meaning, as he explained, that no premium had been charged or collected on it); and it was sent to the home office at New York, where it has since remained. It appears that the $93.00 premium paid was never returned to *Page 447 
plaintiff, nor any part thereof, and is still in the hands of the agent. Plaintiff contends that he frequently demanded or requested the return of the premium from Griffith; and on the day of the fire while the building was being burned he requested from Roy Reed the return of Addia's premium. There is a denial on the part of Roy Reed that such demands or requests had been made, and Griffith says no demand was made when the policy was surrendered to him, but afterwards Amos Reed requested the money, and he referred him to Roy Reed, the agent who succeeded him, for payment. The Netherlands policy had never been delivered, and was duly cancelled by that company, as it had not been accepted by the assured.
Plaintiff contends that the policy sued on was delivered with the understanding that the defendant would refund the unearned premium; and that the unearned premium never having been returned the policy was in full force and effect at the time of the fire.
Thus it will be observed there are two main issues between the parties: (1) that because the agent knew at the time the policy was issued that the house was unoccupied, there was a waiver of the condition of the policy that no recovery for loss could be asserted against the company if the house remained vacant for a period of forty days; and that the defendant is thereby estopped from relying upon that condition of the policy; and (2) that the policy was never surrendered nor cancelled so far as plaintiff was concerned because the condition of its surrender and cancellation, namely, repayment of the unearned premium had not been complied with.
On the first proposition the decisions are quite at variance. Some of them hold that if the property is insured with knowledge that it is vacant or unoccupied the insurer can not insist on that condition of the policy to defeat payment after loss because the premises were vacant or unoccupied and so continued until the time of the loss; even though the policy should contain a condition that it should be void if the property become vacant beyond a specified time. MilwaukeeMechanic's Insurance Co. v. Brown, 3 Kan. App. 225; *Page 448 Rochester Loan Banking Co. v. Liberty Ins. Co., 44 Neb. 537;Cross v. National Fire Insurance Company, 132 N.Y. 133; Devine
v. Home Ins. Co., 32 Wisconsin 471. The Devine case, last cited, seems to have been overruled by England v. WestchesterFire Insurance Co., 81 Wisconsin 583, wherein it is said that, "Waiver of a condition against a building continuing vacant for ten days will not be presumed from the mere fact that it was vacant when the insurance was effected, when nothing whatever occurred or took place between the parties upon this subject at the time, or thereafter, before the loss." On the other hand there are other decisions holding that where premises are insured with knowledge that they are vacant or unoccupied, this will not waive a condition making the policy unenforceable if the premises be or become vacant or unoccupied and so remain for a specified period. Pottsville Fire Ins. Co. v. Fromm,100 Pa. 347; Queen Insurance Co. v. Chadwick,13 Tex. Civ. App. 318; Moore v. Niagara Fire Ins. Co., 199 Pa. 49; May
v. Globe Rutgers Fire Insurance Company, 23 Ga. App. 798,99 S.E. 631; Thomas v. Hartford Insurance Co., 53 S.W. 297 and 56 S.W. 264; and Conn. Fire Insurance Company v. Tilley,88 Va. 1024. In the last case cited the Virginia court held that the fact that at the time of the issuing of the policy the premises were vacant did not waive the condition in the policy to the effect that if the premises became and remained vacant for ten days without the company's assent the policy should be void. It will be observed that the policy under consideration provided that if the premises became vacant or unoccupied beyond a period of ten days then the insurer should not be liable for loss or damage, unless provided by agreement in writing added to the policy; by a rider attached thereto this date of unoccupancy or vacancy was extended for thirty days after the period permitted by the condition in the policy; and this was a privilege granted to the insured. It is undisputed that the agent knew the property was vacant at the time the policy was issued and that it remained so until the fire occurred, a period of nearly three months. At the time the company requested the cancellation of the policy because *Page 449 
of the vacancy, more than forty days had passed and the property remained vacant. The breach of the condition in the policy then occurred; and it was because of this breach, and because the Insurance Company did not insure unoccupied houses that it requested a return and cancellation of the policy. The cause for this action was clearly understood by both Addia and his agent, Amos Reed. The company was standing upon that condition in the policy, which appears to be of standard form. Clearly there was no waiver of this condition at the time its breach was discovered by the company; on the contrary, it was insisting that the policy be surrendered and cancelled for that cause. It was held in Harris v. North American InsuranceCompany, 190 Mass. 361, that the terms of the policy making it void in case the building insured become and remained vacant for a specified time were not changed by implied waiver because the agent knew the building was unoccupied, since the provision refers to a possible future, and not to a present use of the property, citing Batchelder v. Queen Insurance Company,135 Mass. 449. The fact that the property was not occupied was unknown to the company, but was well known to the agent, and it may be that he has power to waive the clause in the policy regarding vacancy for the period of ten days. Lynchburg FireInsurance Co. v. West, 76 Va. 579; Mutual Fire Insurance Co. v.Ward, 95 Va. 231. But the rider prepared by the agent and attached to the policy, by which the provision in the policy was modified in favor of the assured, must be given some effect. If knowledge of the vacancy of the property at the time of the issuance of the policy waived its future occupancy during the time the policy was in force, the rider would be meaningless and have no significance or effect. The agent and assured would have done a vain and useless act. Moreover, as soon as the vacancy became known to the company it took steps immediately to cancel the policy on that ground alone. There was no continuing waiver. Long before the fire, plaintiff was fully advised that the company was insisting upon the provision contained in the rider against unoccupancy. It was under these facts that he surrendered the policy, refusing to carry other insurance *Page 450 
because the property was unproductive. Whether the policy was surrendered conditionally or unconditionally, it was voluntary and because the property remained vacant. No doubt it was agreed that the unearned premium should be refunded; and plaintiff says that frequent demands were made upon Griffith after the policy was surrendered, even up to the time of the fire. There was no claim that the policy was in force, or demand made for its return. This course of dealing with full knowledge on the part of both parties that the vacancy of the house was the moving cause does not constitute a waiver of a breach of the condition of the rider in respect to vacancy, and would not lead the assured to regard himself as still protected by the surrendered policy. It cannot be said that he was lulled into a sense of security. He did not expect to pay the remainder of the premium; all he required or expected was the return of the unearned premium. Neither of the parties regarded the policy as in force after its surrender. Hopkins v.Insurance Company, 78 Iowa 344. An insurance company cannot arbitrarily cancel a policy without compliance with the statute Section 67 Chapter 34 of the Code. The assured must be given at least five days' notice in writing of the intention to cancel, and the unearned premium must be returned. The statute thus affords the assured time to procure insurance elsewhere and be protected against fire; and if he does not assent to the cancellation and a fire occurs before the expiration of the five days and return of the unearned premium, the policy is in full force. But cancellation may be effected by mutual agreement, like any other contract. The burden of showing that the assured agreed to cancellation is upon the insurance company if a cancellation by agreement is relied upon. Kelley
v. Insurance Company, 75 W. Va. 637. That there was an agreement for surrender and cancellation is beyond controversy; the terms of that agreement are the ground of contention. Plaintiff's evidence taken in its strongest light is that the policy was surrendered to Griffith with the understanding that the unearned premium was to be paid on delivery. Amos Reed, plaintiff's agent, in answer to the question, "Under what circumstances *Page 451 
was the policy delivered Mr. Reed?" answered: "The policy was delivered with the understanding that they would refund on the delivery of the unearned premium that was paid on the policy." Griffith says that when the policy was surrendered on the street, he told Amos Reed that he would take the policy to Roy Reed who succeeded him as agent who would pay the unearned premium. There is little controversy over the agreement. Amos Reed says he demanded payment of the money several times even up to the time of the fire; and Griffith says that demand was made on him by Amos Reed and he told him to go to Roy Reed and get the money. Roy Reed says no request was made to him; and he always had the money on hand for payment. Upon the surrender of the policy under the agreement and understanding the relation of creditor and debtor was created and recognized as such by plaintiff as evidenced by his continuing request for payment of the money. The return of the policy was not demanded. The actions of the parties clearly indicate their assent to the terms and their interpretation of the agreement of cancellation. What the parties do under an agreement is a potent factor in arriving at the intent. The agreement is interpreted and construed by what the parties do under it, unless contrary to the positive terms or in contravention of law.
Can there be any question that the policy was surrendered for cancellation, was cancelled, and so understood by both parties? We think there can be none.
In view of the rider extending the period of unoccupancy or vacancy as a privilege to the assured for thirty days beyond the period of ten days contained in the body of the policy, we are constrained to hold that there was no waiver of vacancy because the agent knew that the premises were unoccupied at the time of the policy contract; buttressed by the fact that when the breach of the condition was discovered, and the premises found to be vacant, the company through its general agent, directed a return of the policy for cancellation, and neither claimed nor received any premium whatever, making a "flat" cancellation before the fire occurred. The breach of the condition respecting vacancy as set out in *Page 452 
the rider, unoccupancy after forty days expired from the date of the policy, would prevent recovery, even though no part of the premium had been refunded.
The policy contract did not contemplate that the property would continue to be vacant for the entire term. It is distinguishable from policies issued on vacant and unoccupied property, expected to remain vacant; and where, with that knowledge and expectation the policy is issued the clause against vacancy is waived. Backhaus v. Caledonian Ins. Co.,112 Md. 676. A waiver of the ten-day clause in the policy is negatived by the rider which extends the privilege of unoccupancy for thirty days longer. See May v. Globe Ins. Co.,23 Ga. App. 798, 99 S.E. 631; Thomas v. Hartford Fire Ins. Co., 21 Ky. L. 914, 53 S.W. 297 and 56 S.W. 264; Harris v. NorthAmerican Ins. Co., 190 Mass. 361, 4 L R. A. (N.S.) 1137.
On the second proposition, namely, surrender of the policy for cancellation by agreement, we think the evidence clearly establishes that there was such agreement and that both parties understood and agreed that the unearned premium should be paid upon its surrender, that such surrender was made for cancellation, thus creating the relation of debtor and creditor as to the unearned premiums, and extinguishing the relation of insured and insurer. The peremptory instruction to find for defendant should have been given. There are many points of error assigned relating to the action of the court in overruling the demurrer to the declaration, to the pleadings, introduction and refusal of evidence, and refusal to give instructions, which are unimportant in view of our conclusions, and are therefore unnecessary to be discussed. The verdict is set aside, the judgment reversed, and a new trial awarded.
Verdict set aside; judgment reversed; new trial. *Page 453